PAUL F. ROEMER, JR., AND MARCIA E. ROEMER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 949–80.    Filed August 30, 1982.

*John Gigounas* and *Edward B. Simpson*, for the petitioners.
*Donna I. Epstein*, for the respondent.

---

DAWSON, *Judge*: Respondent has determined a deficiency of $32,908 in petitioners' Federal income tax for the year 1975.

Concessions have been made by the parties. The issues presented for decision are:

1. Whether petitioner Paul F. Roemer, Jr., is entitled under section 104(a)(2)[1] to exclude from his gross income for 1975 compensatory damages of $40,000 received as a result of a favorable jury verdict in a libel suit.

2. Whether punitive damages of $250,000 in the same libel suit are likewise excludable from petitioner's gross income as having been received on account of personal injuries.

3. If the compensatory and punitive damages are includable in petitioner's gross income, whether they should be treated, in whole or in part, as ordinary income or capital gain.

4. Whether costs of $7,751 are includable in petitioner's gross income and, if so, whether they are deductible under section 212.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioners are husband and wife who resided in Piedmont, Calif., at the time their petition herein was filed. They timely filed a joint Federal income tax return for 1975 with the Internal Revenue Service Center in Fresno, Calif. Marcia E. Roemer is a party to this proceeding solely by virtue of having filed a joint return with her husband. Consequently, Paul F. Roemer, Jr., shall hereinafter be referred to as petitioner.

Petitioner is, and has been since 1941, an independent insurance broker. In 1952, he started his own insurance business in the area of Oakland, Calif., where he had lived all of his life. In an effort to build clientele, he worked out of the offices of a real estate broker and became a member of numerous social and civic organizations as well as professional associations.

By the mid–1960's petitioner, then doing business as Paul F. Roemer, Jr., Inc., enjoyed an excellent reputation in the community, both personally and professionally. His gross

---

[1] All section references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue, unless otherwise indicated.

income at that time had risen to approximately $300,000 (about one-half of which represented his net income).

Until 1965, petitioner sold primarily casualty insurance, but at that time he had an opportunity to expand into the field of selling life insurance. Gordon Maxson, an expert in the life insurance business and both a business associate and friend of petitioner's, persuaded petitioner to seek authorization from the Penn Mutual Life Insurance Co. (hereinafter Penn Mutual) so that they could form a partnership for the sale of casualty and life insurance and work on certain insurance matters. Petitioner applied for an agency license from Penn Mutual to sell life insurance. In the course of reviewing that application, a credit report was sought from Retail Credit Co. (hereinafter Retail Credit). Retail Credit subsequently prepared such a report and sent it to Penn Mutual and other insurance companies. The report on petitioner was grossly defamatory in nature. It falsely stated, among other things, that petitioner was ignorant in insurance matters, neglected his clients' affairs, was recently fired from his position as president of an insurance firm, and intentionally defaced property belonging to others. The report also questioned petitioner's honesty, implying that he misappropriated funds belonging to others for his personal benefit.

Upon learning of the defamatory report, petitioner demanded that Retail Credit issue a retraction. Thereupon, Retail Credit distributed to those companies which had received the original publication a letter and purported retraction which in fact contained further false and defamatory innuendos regarding petitioner's general business and personal character and his fitness as an insurance agent.

As a result of Retail Credit's report, petitioner was denied agency licenses to sell life insurance by Penn Mutual and other insurance companies. Furthermore, his then-existing business relationships were damaged, as well as his ability to attract new clients. This was due in part to the nature of his business because most of his friends were also his clients, and vice versa. Retail Credit's report thus caused his insurance profits to diminish and his business reputation to be damaged.

On May 14, 1965, petitioner filed a complaint for damages against Retail Credit in the Superior Court for Alameda County, Calif. He alleged that the publication of the Retail

Credit report damaged his good reputation as a licensed insurance broker, and it caused him "to lose insurance business from Penn Mutual Life Insurance Company" and to lose "further profits from similar business with other insurance companies." He sought general damages of $50,000. In an amended complaint filed in November 1967, the petitioner alleged that the securing of insurance customers and credit was dependent upon his "business reputation, credit standing and financial responsibility." Paragraph III of the amended complaint alleged:

That at all times prior to the publication of the matters herein complained of, plaintiff has enjoyed a good name and business reputation, both generally and in particular with respect to high standards of business, service rendered to clients, credit standing, honesty, integrity, financial responsibility; that by reason of this excellent name and reputation, plaintiff has enjoyed the continued patronage of his clients and of insurance companies he represents; that the continued patronage of plaintiff and the respect of his clients and companies depends on the good name and reputation of plaintiff for honesty, integrity, quality of service, financial responsibility, credit standing and high standards of business practice.

In paragraph VIII of the amended complaint, it is alleged that the publication by Retail Credit was done "with intent to damage his reputation, and to injure him in his business profession and occupation" and that he was generally damaged in the total sum of $136,000. Punitive damages were claimed in the amount of $840,000.

At the trial of the State court libel suit, the petitioner produced evidence of his exemplary background and reputation in the insurance field and about the growth and profitability of his business. He told the jury of his proposed business relationship with Gordon Maxson which would have expanded his casualty insurance business to include life insurance. He told the jury about applying for an agency license with Penn Mutual so that his proposed partnership with Mr. Maxson could be effectuated and how the relationship fell through because of the negative, false, and defamatory "agency qualification" report sent to Penn Mutual by Retail Credit. He told the jury that other insurance licenses were denied him as a result of the defamatory qualification report. He told the jury that he lost income as a direct result of the false report. He described in detail to the jury how the defamatory report affected his business relations, but said little, if anything,

about how it affected his personal affairs. The evidence presented through many witnesses in the trial of the libel suit was primarily directed at how the petitioner's business relationships and planned business ventures were harmed by the false report of Retail Credit. There was no testimony by the petitioner or others in the libel suit that the libelous report was published anywhere outside of the insurance industry.

Petitioner's counsel in the libel suit presented the following arguments to the jury regarding the amount of damages the petitioner should be awarded as a result of the defamation: (1) Petitioner had an excellent character, and his reputation throughout the years prior to the defamation, in both the insurance industry and his personal life, was also excellent; (2) the defamatory publication prevented the petitioner from being licensed by Penn Mutual and prevented him from doing business with Gordon Maxson and others; (3) petitioner suffered severe damage to his general reputation; (4) the defamation caused him shock, embarrassment, shame, anxiety, and worry; and (5) punitive damages were warranted by reason of the severity of the statements made and the malice shown on the part of Retail Credit.

Petitioner's counsel did not argue to the jury that separate amounts should be awarded for damages to petitioner's business reputation and to his personal reputation. Nor did counsel request a verdict dividing the "compensatory" damages between those which were "general" (personal injuries) and "special" (loss of business profits and reputation) in accordance with California Civil Code section 48a.4.(a) and (b).

The judge in the proceeding instructed the jury that libel under California law is described as follows:

a false and unprivileged publication by writing, which exposes another person to hatred, contempt, ridicule or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation.

Then, as to damages, the judge told the jurors:

There are two kinds of damages that may be recovered in actions of this kind: First, compensatory damages, which are damages actually suffered by reason of the wrong complained of, if any; and, second, exemplary or punitive damages.

\* \* \* \* \* \* \*

General damages shall be in an amount which will compensate Plaintiff

for all detriment proximately caused by the Defendant, whether Defendant could have anticipated it or not.

It is stipulated in this case and therefore conclusively presumed that the Plaintiff was and is a man of good general reputation.

In arriving at the amount of the Plaintiff's actual or compensatory damages you may take into consideration the grief, anguish, mental suffering, mortification and humiliation which Plaintiff has undergone and suffered by reason of the Defendant's publication.

In assessing general and compensatory damages you may consider the prominence of the Plaintiff in the community in which he lives, his social standing, his family status or any mental suffering proximately resulting from the defamation.

In assessing general damages you may award Plaintiff loss of the prospective profits he was reasonably certain to have realized, but for the Defendant's publication, and also general damages for injury to his business reputation.

\*     \*     \*     \*     \*     \*     \*

If you find that the Plaintiff has suffered actual damages as a proximate result of the acts of the Defendant on which you base your findings of liability, you may in your sole discretion award additional damages against the Defendant known as punitive or exemplary damages for sake of example and by way of punishing the Defendant. If, and only if, you find by a preponderance of the evidence that said Defendant has been guilty of oppression, fraud and actual malice.

On February 14, 1971, a jury verdict was entered in favor of the petitioner, awarding compensatory damages of $40,000 and punitive damages of $250,000, together with costs.[2] The jury gave no indication of the basis upon which they arrived at such amounts.

On his Federal income tax return for 1975, the petitioner reported $16,020 of the damage portion of the recovery as income, and $7,751 for costs and $23,371 for interest received

---

[2]The jury verdict was unsuccessfully appealed on the basis, inter alia, that it was excessive in amount. *Roemer v. Retail Credit Co.*, 44 Cal. App. 3d 926, 119 Cal. Rptr. 82 (1975). Petitioner received his damage award in 1975. His total net recovery was $147,140, calculated as follows:

| | | |
|---|---|---:|
| Compensatory damages | $40,000 | |
| Punitive damges | 250,000 | |
| Interest and costs | 85,601 | |
| | | $375,601 |
| Less: | | |
| Attorneys' fees | 220,710 | |
| Costs | 7,751 | |
| | | 228,461 |
| Net to Petitioner | | 147,140 |

as income. In his amended petition, the petitioner alleges that $16,020 of the damage portion of the recovery and $7,751 for costs were incorrectly reported on his tax return.

In his notice of deficiency, respondent determined that the entire judgment received by petitioner should be included in his gross income, and that all costs and attorneys' fees should be allowed as a deduction.

## OPINION

Petitioner contends that the damages, both compensatory and punitive, awarded to him by the jury were "on account of personal injuries" to his personal and professional reputation and are thus excludable from his gross income under section 104(a)(2). Alternatively, he argues that if the damages are includable in his gross income, they must be, at least in part, treated as long-term capital gain because of the loss caused to his goodwill and going-concern value by the defamatory report.

Respondent, on the other hand, contends that the compensatory damages are includable in petitioner's gross income under section 61 since they were awarded *primarily* to compensate him for lost income, past and future. He argues that the petitioner has not brought himself within the exclusion of section 104(a)(2) because the amounts were awarded to compensate him for damages to his business and professional reputation, as distinguished from his personal reputation. With respect to the punitive damages, respondent contends that they are includable in petitioner's gross income "as a matter of law" and that, in any event, they were not paid on account of personal injuries and therefore are not excludable under section 104(a)(2). Finally, respondent contends that (1) the compensatory damages are taxable as ordinary income because they represent compensation for lost past and future income; (2) the punitive damages are taxable as ordinary income as a matter of law; and (3) even if there was damage to petitioner's business goodwill and therefore a capital recovery, the petitioner's basis is zero and the recovery is fully taxable as ordinary income.

## 1. Compensatory Damages

Section 61 provides that, except as otherwise provided, gross income means "all income from whatever source derived." Section 104(a)(2) excludes from gross income "the amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness." Section 1.104–1(c), Income Tax Regs., states in part that damages received means an amount received from an action based on tort or tort-type rights, thus making no distinction between physical and mental or emotional injuries. *Seay v. Commissioner*, 58 T.C. 32, 40 (1972). The law is settled that the tax consequences of an award for damages depend on the nature of the litigation and on the origin and character of the claims adjudicated, but not the validity of such claims. *Woodward v. Commissioner*, 397 U.S. 572 (1970); *United States v. Gilmore*, 372 U.S. 39 (1963); *Seay v. Commissioner, supra*. The proper inquiry is in lieu of what were the damages awarded. *Yates Industries, Inc. v. Commissioner*, 58 T.C. 961, 972 (1972), affd. without published opinion 480 F.2d 920 (3d Cir. 1973); *Wolfson v. Commissioner*, 651 F.2d 1228 (6th Cir. 1981), affg. and remanding T.C. Memo. 1978–445.

The threshold question raised by the parties is whether a distinction should be drawn between personal reputation and business or professional reputation for purposes of determining excludability under section 104(a)(2) where, as here, the jury award of damages makes no apportionment in that respect. Although the petitioner acknowledges that he suffered injury to his professional reputation, and in essence admits that it is difficult, if not impossible, to determine what portion of the damages was on account of personal injury, he nevertheless argues that when there is an inextricable combination of damages to both professional and personal reputation, the entire award comes within the exclusion of section 104(a)(2). To the contrary, respondent asserts that since the petitioner's injury was *predominantly* to his business and professional reputation, the exclusion of section 104(a)(2) is unavailable to him.

In our opinion, a distinction must be made. We think the taxation of damages received pursuant to a court judgment in a suit for injury to a person's reputation, caused by defamatory statements constituting libel, depends on whether or not such

defamation results in injury to the personal reputation of an individual, as distinguished from libel that injures his business or professional reputation, to the extent it has affected or may affect his income. See and compare *Glynn v. Commissioner*, 76 T.C. 116, 120 (1981), affd. per curiam without published opinion 676 F.2d 682 (1st Cir. 1982); *Wolfson v. Commissioner, supra*; *Seay v. Commissioner, supra*; *Agar v. Commissioner*, T.C. Memo. 1960–21, affd. on a related issue 290 F.2d 283 (2d Cir. 1961); *Draper v. Commissioner*, 26 T.C. 201 (1956); *Klein-schmidt v. Commissioner*, 12 T.C. 921 (1949); *Hawkins v. Commissioner*, 6 B.T.A. 1023 (1927). In light of this principle, petitioner must bring himself squarely within the exclusion from tax upon which he bases his case, i.e., that the amounts for damages resulted from injury to his *personal reputation.* We think he has failed to do so.

To ascertain the nature of the damages received, it is necessary to examine the allegations contained in petitioner's first and amended complaints filed in the California libel suit and the issues and evidence before the State court. It is our view that a realistic consideration and analysis of the petitioner's pleadings, testimony, and other evidence in the libel suit lead to the conclusion that the predominant nature of his claims involved damages to his business and professional reputation as an insurance broker. This conclusion is supported by pertinent allegations in petitioner's complaints which are set out in our findings. It is also supported by his testimony at the libel trial about how he lost the insurance account which depended on the Penn Mutual license and about how his proposed partnership with Gordon Maxson failed to material-ize. He described the instances where specific licenses were denied by other insurance companies because of the false qualification report circulated within the insurance industry by Retail Credit. His lawyer told the jury in his closing statement that the evidence they heard proved that the petitioner lost $136,000 in prospective income, which was the amount sought in the amended complaint. This was the main thrust of the evidence the jury had to consider in reaching its verdict of $40,000 in compensatory damages.[3]

---

[3]Not surprisingly, the primary emphasis in petitioner's testimony in the Tax Court shifted

Accordingly, we hold that the petitioner has failed to establish that the amount of compensatory damages was on account of personal injury and excludable under section 104(a)(2).

## 2. Punitive Damages

We must next consider whether the punitive damages of $250,000 received by petitioner are includable or excludable from his gross income.

Prior to 1955, this Court adhered to the view that punitive damages did not constitute gross income for tax purposes. *Glenshaw Glass Co. v. Commissioner*, 18 T.C. 860 (1952), affd. 211 F.2d 928 (3d Cir. 1954). In 1955, the Supreme Court granted certiorari and reversed the position of this Court and the Third Circuit. *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426 (1955). At issue in that case was the taxation of punitive damages received for violation of the Federal antitrust laws and for fraud. The Supreme Court held that the receipt of such damages did constitute gross income for tax purposes. It reasoned that Congress' intent was to tax all gains except those specifically exempted; that the punitive damages were undeniable accessions to wealth, clearly realized and over which the taxpayers had complete dominion; and that there was no evidence of congressional intent to exempt such payments. In note 8 on page 432 of its opinion, the Supreme Court said:

Damages for personal injury are by definition compensatory only. Punitive damages, on the other hand, cannot be considered a restoration of capital for taxation purposes.

In Rev. Rul. 58–418, 1958–2 C.B. 18, the Internal Revenue Service ruled that an amount received in settlement of a libel suit, for both compensatory and exemplary (punitive) damages for injury to personal reputation, constitutes income to the recipient to the extent that such amount represents satisfaction of exemplary damages. This ruling does not relate to the specific exclusion from gross income of section 104(a)(2).

to damage to his personal reputation, and the damage to his business reputation became less important. We regard his testimony in the libel trial as being more accurate and probative. His testimony in that trial is admissible in this case. See Fed. R. Evid. 801(a) and (d)(2).

However, several years later the Commissioner revived the question of excludability of punitive damages. In Rev. Rul. 75–45, 1975–1 C.B. 47, the specific issue considered was whether an amount received by the estate of a deceased employee under his employer's aircraft liability policy could be excluded from gross income. The policy payment was contingent upon a full release from all claims which were considered punitive. The ruling focused on section 104(a)(2) and concluded that *any* damages, whether compensatory or punitive, received "on account of personal injuries or sickness" are excludable from gross income. Since his interpretation *arguably* comes within the language of section 104(a)(4),[4] the Commissioner, in his administrative discretion, has chosen to allow punitive damages to be excluded from gross income in the same manner as compensatory damages *provided they arise out of a personal injury*. Otherwise, an award for punitive damages in a libel suit must be included in gross income and taxed like other gain. Rev. Rul. 58–418, *supra.*

Here we have found, factually, that the compensatory damages were intended to reimburse the petitioner for lost profits resulting from damage to his business reputation, rather than to his personal reputation. It therefore follows that the punitive damages were not awarded "on account of personal injuries" to the petitioner. This is consistent with the Supreme Court's decision in *Commissioner v. Glenshaw Glass Co., supra,* and the Commissioner's ruling positions in Rev. Rul. 58–418, *supra,* and Rev. Rul. 75–45, *supra.* Accordingly, we hold that the punitive damages are includable in petitioner's gross income.

---

[4]We note, however, that punitive damages under California law are imposed against a defendant to serve as an example or warning to others not to engage in similar conduct. Cal. Civ. Code sec. 3294; *Roemer v. Retail Credit Co.,* 44 Cal. App. 3d 926 (1975); *Wetherbee v. United Insurance Co.,* 18 Cal. App. 3d 266 (1971). Relevant factors considered by a jury in awarding punitive damages include: (1) Whether the amount is enough to impose the appropriate punitive effect; (2) the importance of the policy violated by the defendant; (3) the degree and extent of the malice demonstrated by the defendant; and (4) the financial circumstances of the defendant. *Weisenberg v. Molina,* 50 Cal. App. 3d 478 (1976); *Roemer v. Retail Credit Co., supra.* The more reprehensible the act of the defendant, the greater the permissible award of punitive damages, so long as the amount is not disproportionately high between punitive and compensatory damages. *Werschkull v. United California Bank,* 85 Cal. App. 3d 981 (1978). Thus, it appears that under California law, punitive damages relate to the defendant's oppression, fraud, and malice and are not directly related to personal injuries suffered by the plaintiff. Cf. *Commissioner v. Glenshaw Glass Co.,* 348 U.S. 426, 432 n. 8 (1955).

### 3. Ordinary Income or Capital Gain

As previously indicated, the taxability of the proceeds of a lawsuit depends upon the nature of the claim and the actual basis of recovery. If the recovery represents damages for lost profits, it is taxable as ordinary income. However, if it represents a replacement of capital destroyed or injured, the money received, to the extent it does not exceed the basis, is a return of capital and not taxable. See *Sager Glove Corp. v. Commissioner*, 36 T.C. 1173, 1180 (1961), affd. 311 F.2d 210 (7th Cir. 1962), and the cases cited therein. To the extent that the money received exceeds the basis in the capital asset destroyed, i.e., goodwill, the gain therefrom may be taxable as a capital gain under section 1231(a).

Respondent's determination that the amount of damages is taxable as ordinary income is presumptively correct, and the petitioner bears the burden of proving that a portion of the award is allocable to the loss of goodwill. *Welch v. Helvering*, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.

The evidence in the libel suit indicates strongly to us that the amount of $40,000 received as compensatory damages was for lost profits, past and future. In that suit, no claim for loss of goodwill was alleged or considered or valued by the jury. There was no evidence regarding the loss of confidence by petitioner's insurance clients, only that he was unable to expand his business to cover the sale of life insurance as he had planned. The jury did not allocate any portion of the award for any damages to the loss of goodwill. It is also significant that later, when he filed his Federal income tax return for 1975, the petitioner made no claim that any portion of the award represented a reimbursement for loss of capital. We think that since the petitioner's anticipated profits would have been taxable as ordinary income, so must the jury award for compensatory damages. See *Agar v. Commissioner*, T.C. Memo. 1960–21, affd. on a related issue 290 F.2d 283 (2d Cir. 1961); *Wolfson v. Commissioner*, 651 F.2d 1228 (6th Cir. 1981), affg. and remanding T.C. Memo. 1978–445. Consequently, upon consideration of the entire record, we conclude that the petitioner has not met his burden of proving that any portion of the amount received as compensatory damages was paid as compensation for injury to goodwill or any other capital item.

The allegations of the complaints, the evidence as a whole, and the jury award simply do not provide any basis for making an allocation of the recovery, and finding that all or any part represented a return of capital. See *Cullins v. Commissioner*, 24 T.C. 322, 328 (1955); *Wallace v. Commissioner*, T.C. Memo. 1976–219; *Thomson v. Commissioner*, T.C. Memo. 1965–237, affd. 406 F.2d 1006 (9th Cir. 1969). Under these circumstances the petitioner's claim for loss of goodwill appears to us to be nothing more than a tax-motivated afterthought. See, e.g., *Carter's Estate v. Commissioner*, 298 F.2d 192 (8th Cir. 1962), affg. 35 T.C. 326 (1960).

Punitive damages, to the extent they are taxable, constitute ordinary income rather than capital gain. In *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 432 (1955), the Supreme Court stated that punitive damages, following injury to property, "cannot be considered a restoration of capital for taxation purposes." Cf. *Morse v. United States*, 178 Ct. Cl. 405, 371 F.2d 474, 482–483 (1967). See also sec. 1.61–14(a), Income Tax Regs.

## 4. Costs

In his notice of deficiency, respondent included "costs" of $7,751 in petitioner's gross income and allowed a deduction in the same amount under section 212. The record does not show whether the petitioner received any tax benefit by claiming such costs as deductions in years prior to 1975. Presumably he did not, because, otherwise, respondent would not have allowed the offsetting deduction.

Petitioner contends that the reimbursement of costs he received should not be included in his gross income because it constituted a recovery of capital.

It is unnecessary for us to decide whether the reimbursement of costs should be excluded from petitioner's gross income, as petitioner contends, or whether the costs are includable in gross income and deductible under section 212, as respondent contends. Under either rationale, the result would be the same on the particular facts of this case. Therefore, we regard the issue as moot and, exercising judicial restraint, we decline to answer it in the context of this case.

There are no adverse tax consequences to the petitioner insofar as the deficiency is concerned.

*Decision will be entered for the respondent.*

Reviewed by the Court.

FORRESTER, *J.*, dissenting: Section 61(a) reads: "Except as otherwise provided in this subtitle, gross income means all income from whatever source derived." Section 104(a)(2) provides: "In General * * * gross income does not include * * * (2) the amount of any damages received * * * on account of personal injuries."

The majority correctly concludes that the exception clause of section 61 has validity; that section 104 exercises that exception, and that in a tort action, such as libel, no distinction is to be made between physical and mental or emotional injury.

At this point, the majority opines that a distinction must be made between defamatory injury to personal reputation vis-a-vis defamatory injury to business or professional reputation "to the extent it has or may affect * * * income."

At this point, I must depart the company of the majority for in my view no such distinction is possible in the factual posture here presented.

The term business or professional reputation does not refer to some intangible other than reputation, generally (or personal reputation). It does refer to the *manifestation* of that intangible in the context of one's career, as opposed to one's family and social life.

This is particularly evident in the instant case. Petitioner built an extremely successful insurance practice by making as many social friends and acquaintances as possible (through memberships in social and civic clubs and organizations) and then cultivating them into business clients. The net result was that almost all of his personal friends were also his business clients, and vice versa. The personal and professional sides of his reputation were so intertwined as to be inseparable and indistinguishable.

The test, therefore, of excludability under section 104(a)(2) is not one of injury to personal versus business reputation, as in either case, the injury is to reputation—a personal injury—

and therefore excludable. Instead, I believe the proper inquiry is whether the injury sought to be redressed is one to reputation, at all, or only to one's occupation; as, for an example, an automobile dealer who has for years increased his volume of new car sales on the strength of his reputation for maintaining and operating an excellent service department. This operation is maliciously slandered by a competitor and tortious damage results. The slander obviously has nothing to do with the personal reputation (character, honesty, etc.) of the dealer, and the award of damages to him would be wholly business-related and outside the scope of section 104(a)(2).

I am well aware that the determination of whether the true nature of the claim in a given situation is injury to reputation or injury to occupation will not always be an easy one. This is especially true where a libel or slander is the impetus for the action. The determination will have to be made on the basis of all the facts and circumstances. While no single factor should be determinative, the following factors are among those which should be considered: (1) The statements made, i.e., whether they are directed at the person's character (honesty, personal habits, etc.) or at his occupation (incompetence, etc.); (2) the geographic area where the statement is published relative to the taxpayer's business and residence; (3) the nature of the taxpayer's occupation; (4) the definitional nature of the action under local law; (5) the relief sought in the complaint; (6) the arguments presented to the jury; (7) the classification (if any) of the damages awarded; and (8) the evidence presented to the jury.

Care must be taken when considering arguments and evidence presented to the jury to determine whether facts concerning professional injury and lost profits are the injury sought to be compensated, *or are merely to show the collateral effects of injury to reputation in an effort to prove the extent or severity of the damages.* See generally *State Fish Corp. v. Commissioner,* 48 T.C. 465 (1967).

Applying these factors to the instant case, I would hold that the damages awarded to petitioner were for injury to his reputation and not to his occupation. Clearly, his profession suffered ill effects as a result of the libel, but the predominant wrong sought to be redressed by petitioner was injury to his personal reputation. The occupational damage and evidence regarding it were merely *manifestations* of that injury.

Consider how this petitioner could have convinced the jury of the enormity of the damage done to him. He could have said he was very, very, very humiliated and hurt; or he could have showed them, as he did, that his personal service business, built upon trust, confidence, and honesty, was financially wounded and nearly destroyed.

I would hold that the compensatory damages received by petitioner are excludable under section 104(a)(2).

I agree with the reasoning of the majority regarding the punitive damages but, of course, would conclude that they were awarded on account of personal injuries and therefore excludable.

The question of exclusion of costs is not moot under the result I would reach. Clearly, no deduction could be allowed under section 212 because no taxable income has been produced or collected nor has property held for the production of income been managed, conserved, or maintained.

I agree with petitioner that the reimbursement of his costs constituted merely a recovery of his capital, not to be included in gross income. The Supreme Court has held that gross income is the *gain* derived from capital, from labor, or from both combined. *Eisner v. Macomber*, 252 U.S. 189, 207 (1920); *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 430 (1955). The operative word, of course, is *gain*, and this petitioner has realized no *gain* when he gets back what was his to start with. *Cochrane v. Commissioner*, 23 B.T.A. 202 (1931); *Haney v. Commissioner*, 5 B.T.A. 1039 (1927); *Gray v. Commissioner*, 10 T.C. 590 (1948).

KÖRNER, *J.*, agrees with this dissent.

WILBUR, *J.*, I respectfully dissent. The majority agrees with respondent that section 104(a)(2) encompasses damages arising from defamation, a conclusion supported by authority but not all that obvious. Assuming section 104(a)(2) excludes damages from defamation, as respondent concedes, then petitioner should prevail even though some or most of the damages are to compensate him for diminished economic opportunity. In this respect I agree with Judge Forrester.

Either a physical injury or a defamation of character may

inflict damages that include lost wages, reduced earning power, or diminished economic opportunity. Indeed, these elements very often comprise virtually all of the damages. In neither of these actions is a self-employed individual appropriately taxable at ordinary income tax rates in 1 year on damages replacing economic opportunities that—without the injury—would produce earnings over the period of his productive life.

Federal tax consequences often flow from, or turn on, the legal characterization of a transaction or cause of action under State law. The majority has reversed the process, characterizing the cause of action under State law in accordance with the misperceived exigencies of Federal tax law. We are cited to no authority in the field of tort law or libel for the bifurcation of a defamation action into categories corresponding to components of damage.

A young surgeon who loses a finger will recover damages that for the most part replace future earnings otherwise taxable, but the loss is not bifurcated into its economic and personal components, thereby subjecting the former to taxation. Neither should damages for defamation of character, since defamation is by definition personal to the plaintiff. In both cases, section 104 excludes the damages from income— both the economic and personal components—from income.[1]

However, the law is clear that punitive or exemplary damages must be included in gross income, and I would so hold. *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426 (1955). Punitive damages are certainly not intended to compensate petitioner for a loss within the purview of section 104. I realize

---

[1]The judge's instructions in Mr. Roemer's defamation suit were standard ones, incorporating the hornbook rules of defamation. Defamation is an invasion of a "relational interest"— the personal "interest in reputation and good name." W. Prosser, Law of Torts 754 (West 1964). It is difficult to see how this personal interest may be fragmented into components. A separate cause of action will, of course, lie for certain interferences with commercial or economic relations (i.e., injurious falsehoods—sometimes termed "disparagement of property," "slander of goods," and "trade libel"—and interference with contractual relations or prospective advantage). W. Prosser, *supra* at 938, 939. But defamation is by definition personal to the plaintiff. W. Prosser, *supra* at 754 et seq. Accordingly, it has been stated:

"Pecuniary loss inflicted by interference with the plaintiff's *personal reputation* already has been encountered in defamation. Because of its ancient, left-handed association with defamation, the kind of interference by falsehoods which are not *personally defamatory*, and yet cause pecuniary loss, has for some centuries been regarded as a more or less distinct tort in itself. [W. Prosser, *supra* at 938. Emphasis added.]"

respondent has a revenue ruling that suggests a contrary result. Rev. Rul. 75–45, 1975–1 C.B. 47. Under appropriate circumstances, respondent may be precluded from taking one position in a ruling with respect to taxpayers in general, and a different position in regard to a taxpayer before the Court. Nevertheless, the facts in Rev. Rul. 75–45, *supra,* are sufficiently different from those herein to permit the surprising but general language of the ruling to be disregarded for now.