RHODA E. NUSSBAUM, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Nussbaum v. Commissioner
Docket No. 15901-80.
United States Tax Court
T.C. Memo 1982-725; 1982 Tax Ct. Memo LEXIS 17; 45 T.C.M. (CCH) 346; T.C.M. (RIA) 82725; December 20, 1982. Rhoda E. Nussbaum, pro se. John M. Elias and David M. Brandes, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the year 1977 of $6,062.39. The issue for decision is whether a $15,000 payment received by petitioner from The New York Times in 1977 was excludable from income as compensation for persons injuries within the meaning of section 104(a)(2). [1]
FINDINGS OF FACT Some of the facts have been stipulated. The stipulation *18 and exhibits attached thereto are incorporated herein by reference. Petitioner Rhoda E. Nussbaum resided in Edison, New Jersey, at the time the petition was filed. From October 22, 1973, to January 27, 1975, petitioner was employed by The New York Times (hereinafter "the Times") as a grade 10 systems analyst. She was the last person hired at the Times to receive a grade 10 status for her type of work. Thereafter, individuals hired by the Times to perform similar tasks were employed at a grade eight status as programers. In January, 1975, petitioner's employment at the Times was terminated. Upon her termination she received $2,024.30 of severance pay. At the time of this separation she had been told she was laid off in a staff reduction as the last-hired grade 10 systems analyst and not fired for cause. Petitioner questioned whether her layoff was in fact proper under the current union contract with the Times because after her layoff other grade eight programers performing similar tasks were hired. Petitioner raised the possible impropriety of her layoff with her shop steward who contacted Rose Edwards, a representative of the Newspaper Guild of New *19 York, Local 3, AFL-CIO. In the meantime, petitioner began job hunting for another programmer analyst or systems analyst position. She experienced difficulty obtaining job interviews. At one point, she felt she was about to be offered a job by a brokerage firm but at the last minute the potential job offer evaporated. She suspected that the Times had a hand in this last incident -- that it might be giving her bad business references -- and she became upset.She called the Legal Aid Society concerning the Times' alleged behavior, but the Society referred petitioner to the Newspaper Guild. On May 5, 1975, petitioner obtained a position with the United States Postal Service. Two weeks later, petitioner changed jobs to work for one of her previous employers, Mobil Oil Corporation. Petitioner continued to pursue her complaint against the Times during this period. Rose Edwards, representing petitioner, attempted to get petitioner's job back at the newspaper. Through informal grievance and arbitration procedures, Edwards argued to the Times that petitioner had been laid off improperly under the union contract because 1) grade eight programmers had been hired to *20 take petitioner's place and 2) petitioner's job had been the subject of subcontracting. Sometime in 1976, the Times contacted petitioner and offered to hire her as a grade eight programmer. Petitioner declined the offer as insufficient. An arbitration hearing on petitioner's grievance was arranged to be held in early 1977. Shortly before that hearing, Rose Edwards learned of a new opening for a grade 10 systems analyst at the Times and informed petitioner. Immediately prior to going before the arbitrator, a representative of the Times met with petitioner and Rose Edwards. At this meeting petitioner expressed interest in the new job opening at the Times. The Times' representative told petitioner, however, that the man now running petitioner's old department at the paper did not want to work with petitioner again. The Times representative then offered petitioner less than a month's salary in lieu of being re-hired. Petitioner declined this offer. The Times representative then left the room and returned with a new settlement offer -- $15,000. Petitioner agreed to accept this amount. Shortly thereafter, on March 14, 1977, a stipulation of settlement *21 of the arbitration proceeding was drawn up and signed by petitioner, Rose Edwards (representing the union) and the Times representative. The settlement document states that the arbitration between the union and the Times was settled on the following terms and conditions: 1. The Times will make a special payment to Rhoda Nussbaum in the sum of $15,000.00 (less legally required deductions) in full settlement, satisfaction and release of any and all claims of Rhoda Nussbaum against The Times, including claims for reinstatement, seniority and breach of contract. 2. Rhoda Nussbaum shall retain the severance pay previously issued to her by The Times and The Times hereby waives its claim to the return of such monies. 3. The parties agree that this arbitration is settled on the basis of the unique facts and circumstances applicable to this case, and that the arbitration is withdrawn without either side conceding the correctness of the other party's position. It is further agreed that this settlement will not be used as a precedent in any subsequent proceeding between the parties including, without limitation, any other dispute involving the issue of whether severance pay *22 must be returned in the event of a grievance. Subsequently, the Times issued a check to petitioner for $10,220.50. In an earnings statement accompanying the check, the newspaper described the payment as $15,000 of severance pay on which $4,777.50 of social security and Federal, state and local income taxes were withheld. On her 1977 Federal income tax return, petitioner claimed credit for the Federal income taxes withheld on the $15,000 payment, but did not include the $15,000 payment in income. She explained that the payment was excludable from income as compensation for damage to her character or for personal injury. OPINION The issue for decision is whether the $15,000 payment petitioner received from the Times in 1977 was excludable from her income as an amount received on account of personal injuries within the meaning of section 104(a)(2). Petitioner argues that the payment was not merely additional severance pay but rather compensation for mental anguish and personal embarrassment experienced as a result of the Times' giving bad references about her to other potential employers. Respondent argues that the payment merely arose out of petitioner's contractual *23 claims against the newspaper and had nothing to do with compensation for mental anguish. Section 104(a)(2) excludes from gross income "the amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness." The determination of whether a settlement payment is exempt from taxation under section 104(a)(2) depends on the nature of the claim settled and not on the validity of the claim. Fono v. Commissioner,79 T.C. 680 (1982); Glynn v. Commissioner,76 T.C. 116, 119 (1981), affd. without published opinion 676 F.2d 682 (1st Cir. 1982); Seay v. Commissioner,58 T.C. 32 (1972). "Damages" falling within section 104(a)(2) are amounts received from an action based upon tort or tort-type rights. Section 1.104-1(c), Income Tax Regs.; Roemer v. Commissioner,79 T.C. 398, 405 (1982), on appeal (9th Cir., Nov. 15, 1982). Amounts received on account of the contractual claims of a dismissed employee, see Glynn v. Commissioner,supra, or for damage to business (as opposed to personal) reputation, see Roemer v. Commissioner,supra, *24 are not excludable under section 104(a)(2). In a case such as this where the settlement agreement lacks express language stating that the payment was made on account of personal injuries, the intent of the payor in making the payment must be discerned. Knuckles v. Commissioner,349 F.2d 610 (10th Cir. 1965), affg. a Memorandum Opinion of the Court. Glynn v. Commissioner,supra at 120. In the instant case we are satisfied that the "predominant nature" of petitioner's claims were for reinstatement, seniority and breach of contract. See Roemer v. Commissioner,supra at 406. First, these were the only claims specified by the Times in the settlement document. Secondly, the Times treated the payment as severance pay and withheld Federal, state and local taxes thereon. See McKim v. Commissioner,T.C. Memo. 1980-93 (withholding of taxes by payor a "significant, although not dispositive" factor). Third, Rose Edwards, who represented petitioner before the Times, testified that the claims she argued on petitioner's behalf were contractual in nature and primarily sought the remedy of reinstatement. *25 Finally, the cash settlement was made to petitioner in the context of a swap for the right to go back to work for the Times -- i.e., the payment was made in lieu of future salary. Wolfson v. Commissioner,651 F.2d 1228 (6th Cir. 1981), affg. on this issue T.C. Memo. 1978-445. Since the claims were essentially contractual and not tortious in nature, the payments received were not excludable by virtue of section 104(a)(2) (which, in general, allows exclusion of the amount of any damages received on account of personal injuries or sickness). Glynn v. Commissioner,supra.
Petitioner maintains that she had a claim for personal injuries arising out of mental anguish from the Times' alleged damage to her business reputation. However, there is no evidence in the record that any such claim was ever brought to the attention of the newspaper. Indeed, it is reasonable to infer that such a claim was not made known to the Times, from the fact that the settlement document is entirely silent on the subjects of business reputation and mental anguish. In any event, to the extent any claim for damage to petitioner's business reputation *26 might have been made, payments received in settlement of such a claim would not be excludable under section 104(a)(2). Roemer v. Commissioner,supra.
Petitioner attempts to explain the lack of mention of this personal injury claim in the settlement document by arguing that the document settled "all claims," which could include a personal claim as well as the enumerated claims for reinstatement, seniority and breach of contract. In addition, petitioner argues that the settlement document's reference to "the unique facts and circumstances applicable to this case" is an oblique reference to her personal injury claim. We find no merit in these arguments. While "all claims" could refer to a personal injury claim as well as to the enumerated contractual claims, there is no evidence that such phrase did in fact refer to such a claim. We think it highly unlikely that an organization such as the Times would sign a document in part settling a suit for mental anguish without, protectively, stating so specifically. Secondly, the reference to "the unique facts and circumstances applicable to this case "must be read in the context that this is a settlement agreement *27 primarily between the union and the newspaper. This "unique facts and circumstances" language appears to have been inserted so that the union could not rely on petitioner's settlement as precedent in further contractual disputes between the union and the Times. It does not appear to be discussing a wholly new claim involved in the settlement. Petitioner's only other argument is that she never had a good contractual claim against the Times and that therefore the payment from it must have been received on account of her personal injuries. As we noted above, it is the nature, not the validity of petitioner's claim which renders it nonexcludable under section 104(a)(2). Fono v. Commissioner,supra at 696. Glynn v. Commissioner,supra at 119. In the instant case, petitioner has not met her burden of proving that the Times intended to compensate for other than contractual (or business reputation) injuries. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect during the year in issue.↩