T.C. Summary Opinion 2006-5

UNITED STATES TAX COURT

STEVE GERALD HUISENFELDT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5448-04S.               Filed January 24, 2006.

Steve Gerald Huisenfeldt, pro se.

<u>James E. Cannon</u>, for respondent.

GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  The decision to be
entered is not reviewable by any other court, and this opinion
should not be cited as authority.  Unless otherwise indicated,
subsequent section references are to the Internal Revenue Code in
effect for the year in issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioner's Federal income tax of $2,958 and an accuracy-related penalty pursuant to section 6662(a) and (b)(1) for the taxable year 2000.

The issues for decision are: (1) Whether petitioner had unreported tip income during taxable year 2000; and (2) whether petitioner is liable for the accuracy-related penalty pursuant to section 6662(a) and (b)(1) for the taxable year 2000.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Deerfield Beach, Florida, on the date the petition was filed in this case.

During taxable year 2000, petitioner was employed as a room service food server by the Las Vegas Hilton (Hilton).

On July 1, 1992, pursuant to section 7121, the Hilton and the Commissioner of the Internal Revenue Service entered into a closing agreement in the form of a Tip Compliance Program "to ensure maximum compliance by the employees of the Employer [Hilton] with those provisions of the Internal Revenue Code of 1986 * * *". The Tip Compliance Program Agreement states as follows, in pertinent part:

> WHEREAS, by law, all employees who receive tips are required to keep timely and accurate records of tips received and to report the tips received to their employer

on a monthly basis, and all tips received are required to be reported as income on federal income tax returns:

WHEREAS, the Las Vegas District of the Internal Revenue Service and Las Vegas Hilton Corporation, (hereinafter "Employer") have agreed to implement a program to ensure maximum compliance by the employees of the Employer (hereinafter referred to as an "Employee" or "Employees") with those provisions of the Internal Revenue Code of 1986, as amended, (hereinafter the "Code") relating to tip income, to minimize the burden on the Employer resulting from tip compliance programs of the Internal Revenue Service (hereinafter the "Service"), and to reduce the cost to the Service of enforcing the relevant provisions of the Code;

WHEREAS, the Service and the Employer have agreed to resolve disputes concerning the responsibility of the Employer under section 3121(q) of the Code for periods preceding this agreement, and to establish procedures which will prevent such disputes in future periods;

NOW IT IS HEREBY DETERMINED AND AGREED for federal income and employment tax purposes as follows:

    *    *    *    *    *    *    *

II.  EMPLOYEE PARTICIPATION

A.    For purposes of this agreement, a "Participating Employee" is an Employee who:

1)    reports and continues to report his or her tips to the Employer at or above the "tip rates" established pursuant to Paragraph V of this agreement; and

2)    timely files federal income tax returns that report those tips.

B.    In order to participate in this program an Employee must have filed, if required to do so by law, federal income tax returns for 1988, 1989, 1990 (and 1991 when due).  Any Employee who has not filed these returns but wishes to participate in this program must file these federal income tax returns with the Las Vegas District Director of the Internal Revenue Service within 60 days of the effective date of this agreement.

C.    Employees with unpaid tax liabilities may participate in this program; however, they must cooperate with the Service in the resolution of their delinquent accounts.  The policy of the Service with regard to the collection of delinquent accounts is set forth in attachment "A" to this closing agreement.

D.    The Service will not initiate new tip income examinations of Participating Employees' tip income for any year prior to 1992 for which a return was timely filed and will not examine tip income for 1992 or any later year in which the Employee is a Participating Employee for the entire period during such year in which he or she earns tip income, provided that the following conditions listed below are fulfilled.  New employees may participate if they make an election to do so within 30 days of the start of their employment.  Such employees must have been participants in any previous employer's tip compliance program if that employer had a tip compliance program and the employee was a tip earner.

*    *    *    *    *    *    *

III. NONPARTICIPATING EMPLOYEES

A.    An Employee other than a Participating Employee (hereinafter a "Nonparticipating Employee") is subject to the full range of compliance and enforcement procedures of the Service.

*    *    *    *    *    *    *

V.    TIP RATES

A.    Tip rates will be established by the Employer and approved in writing by the Service as follows:

(1)  Dealers Who Pool or Split Tips -- The Employer may use either of the following options:

Option A:

The Employees or their representative (e.g., the toke committee) will present to the Employer a listing of the actual tip split received by or given to each Employee. This listing must reconcile to the tokes presented to the Employer's cage for cashing.  The tip rate is the amount of tips so reported to the Employer.  Failure of the Employees

or their representative to present information describing the actual split shall require the use of Option "B".

Option B:

An hourly rate "in lieu" of actual tips will be determined by the method set out in Appendix [D].  In order to exercise this option: (i) the toke committee or other Employee representative must maintain a daily record of the total tips received and the number of Employees receiving a share of split of those tips; (ii) the toke committee or other representative must make available those records of daily tips to validate the "in lieu" rate; and (iii) the Employees must continue pooling tips in the same or larger groups.

2)   Other Tipped Employees

Based on information available to the Employer, historical information provided by the Service, and generally accepted accounting principles, the Employer will establish tip rates for categories or subcategories of employees.  These rates will specify tips received, either by hour or by shift, depending on the nature of the work performed.

The initial rates agreed to by the Employer and the Service will remain in effect through December 31, 1993.  The rates shall thereafter be reviewed and revised (if necessary) no more frequently than annually, unless there is a 20% decrease in the Employer's gross monthly revenue compared to the same month of the previous year.

*    *    *    *    *    *    *

VII. ADDITIONAL PROVISIONS

The additional terms and conditions set forth in attachment "D" are incorporated into and made a part of this agreement.

The tip rates discussed in section V of the Tip Compliance Program Agreement were established in an addendum to the Tip Compliance Program Agreement.  The addendum states, in pertinent part, as follows:

Pursuant to Section V of the Agreement [Tip Compliance Program Agreement] dated July 1, 1992, the parties agree that the following tip rates shall apply beginning on the following effective dates:

| Employee Position | Shift | Effective on 4/3/97 | Effective on 1/1/98 | Effective on 1/1/99 |
|---|---|---|---|---|
| Food Servers: | | | | |
| Room Service | All | 13.0%/Gross Sales | 14.2%/Gross Sales | 15.4%/Gross Sales |

Although petitioner was a participant in the Tip Compliance Program at the Hilton at one time, he withdrew from the program on or about December 10, 1997, and was not a participant in the program during the taxable year 2000. The room service food servers that did participate in the Tip Compliance Program during taxable year 2000 were subject to a tip rate of 15.4 percent of their gross sales for the year.

Petitioner received a Form W-2, Wage and Tax Statement, from the Hilton reflecting wages, tips, and other compensation on Line 1 totaling $19,497[1] for taxable year 2000. The amount of $19,497 included tips in the amount of $784 which were distributed to petitioner as his share of tips from communal banquets or Hilton group events.

During taxable year 2000, petitioner had individual room service sales of $91,281. Additionally, for taxable year 2000, petitioner worked a total of 1,919.6 hours. Further, during

---

[1]All amounts are rounded to the nearest dollar.

taxable year 2000, petitioner did not maintain a tip diary or other log.

Petitioner electronically filed a Form 1040EZ, Income Tax Return for Single and Joint Filers With No Dependents, for taxable year 2000.  On March 30, 2002, petitioner filed a Form 1040X, Amended U.S. Individual Income Tax Return, for taxable year 2000.  On his Form 1040X petitioner claimed an additional capital loss and itemized his deductions.  These changes, which have been accepted by respondent, reduced the amount of tax shown by petitioner on the return.  Petitioner did not declare any room service tips to the Hilton during taxable year 2000.  Also, petitioner did not report additional tips, above the $784 of tips, previously discussed, on either his Form 1040EZ or his Form 1040X.

In the notice of deficiency,[2] respondent determined that petitioner failed to report tip income of $17,046, which was computed by multiplying petitioner's hours worked, 1,919.6, by a rate of $8.88 per hour.  At trial, however, respondent stated that it would be more appropriate to compute petitioner's tip income for taxable year 2000 on the same basis as the room service food servers who participated in the Tax Compliance

---

[2]The notice of deficiency failed to take into account the additional capital loss, itemized deductions, and reduced tax as reported on petitioner's Form 1040X.  Respondent concedes that when any deficiency is computed, the computation should take into account these adjusted amounts.

Program.  In other words, respondent contends that it would be more appropriate to multiply petitioner's gross sales, $91,281, by the Tip Compliance Program tip rate of 15.4 percent to arrive at an unreported room service tip income figure of $14,057.

Also, in the notice of deficiency, respondent determined that petitioner is liable for the accuracy-related penalty pursuant to section 6662(a) and (b)(1) for the taxable year 2000 of $591.60.

## Discussion

As a general rule, the determinations of the Commissioner in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving the Commissioner's determinations in the notice of deficiency to be in error.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  As one exception to this rule, section 7491(a) places upon the Commissioner the burden of proof with respect to any factual issue relating to liability for tax if the taxpayer maintained adequate records, satisfied the substantiation requirements, cooperated with the Commissioner, and introduced during the Court proceeding credible evidence with respect to the factual issue.  Although neither party alleges the applicability of section 7491(a), we conclude that the burden of proof has not shifted with respect to the unreported income. However, respondent has the burden of production with respect to

the accuracy-related penalty.  Sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

1.   Unreported Income

As previously stated, respondent contends that petitioner had unreported tip income for taxable year 2000 of $14,057.  It is respondent's contention that the $14,057 figure is a reasonable estimation of petitioner's tips during the year 2000, especially in light of petitioner's failure to keep a tip diary. However, petitioner contends that he is not liable for the alleged unreported income because he believes he was a participant in the Tax Compliance Program during taxable year 2000, and therefore his tips were included in the $19,497 reported on the W-2 issued by Hilton.

Section 61(a) defines gross income as "all income from whatever source derived," unless otherwise provided.  The Supreme Court has consistently given this definition of gross income a liberal construction "in recognition of the intention of Congress to tax all gains except those specifically exempted." Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430 (1955); see also Roemer v. Commissioner, 716 F.2d 693, 696 (9th Cir. 1983) (all realized accessions to wealth are presumed taxable income, unless the taxpayer can demonstrate that an acquisition is specifically exempted from taxation), revg. 79 T.C. 398 (1982). It is beyond contention that tips are included within the

definition of gross income.  See Roberts v. Commissioner, 10 T.C. 581 (1948), affd. 176 F.2d 221 (9th Cir. 1949); sec. 1.61-2(a)(1), Income Tax Regs.

As previously stated, petitioner contends that he is not liable for the unreported income because he claims he was a participant in the Tax Compliance Program during taxable year 2000, and therefore his tips were included in the $19,497 reported on the W-2 issued by Hilton.  However, respondent has offered into evidence a document titled "Tip Compliance Waiver", which is dated December 10, 1997.  This document states:  (1) Petitioner no longer wishes to participate in the Tip Compliance Program; (2) he wishes to withdraw from the Tip Compliance Program; and (3) he wishes to stop the direct declaration of his tip income and submit declared tips to payroll.  Petitioner contends that the signature on the "Tip Compliance Waiver" is not his own.  However, the signature on the waiver resembles petitioner's signature on Exhibit 2-J, his Form 1040X.  We are convinced that the signature on the waiver is indeed petitioner's.  Therefore, we conclude that petitioner was not a participant in the Tip Compliance Program during taxable year 2000.

Further, petitioner has testified that during taxable year 2000 he would receive cash from a cashier at the Hilton at the end of his daily shifts.  The receipt of this cash was a result

of tips earned by petitioner during his daily shifts.  As previously stated, petitioner did not keep a tip diary of the cash received from the cashier.  Also, petitioner did not report these cash distributions to the Hilton or on his returns filed for taxable year 2000.  Petitioner has failed to provide any evidence to controvert respondent's determination as to petitioner's unreported tip income for taxable year 2000.  He simply presented this Court with frivolous contentions that merit no further discussion.  See Rowlee v. Commissioner, 80 T.C. 1111 (1983); Hallock v. Commissioner, T.C. Memo. 1983-684.  Thus, we sustain respondent's determination on this issue, as modified by respondent's position at trial.

2.   Accuracy-Related Penalty

As previously stated, respondent, in the notice of deficiency, determined that petitioner is liable for the accuracy-related penalty pursuant to section 6662(a) and (b)(1) for the taxable year 2000.

Section 6662(a) provides for an accuracy-related penalty of 20 percent of the portion of any underpayment attributable to, among other things, negligence or intentional disregard of rules or regulations.  Sec. 6662(b)(1).  The term "negligence" is the failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, or the failure to do what a reasonable and ordinarily prudent person would do under

the circumstances.  Neely v. Commissioner, 85 T.C. 934, 947 (1985).  Negligence also includes the failure by the taxpayer to keep adequate books and records.  Sec. 1.6662-3(b)(1), Income Tax Regs.  No accuracy-related penalty may be imposed on any portion of an underpayment if it is shown that there was a "reasonable cause" for such portion and that the taxpayer acted in "good faith" with respect to such portion.  Sec. 6664(c)(1).  The determination of whether a taxpayer acted in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances.  Sec. 1.6664-4(b), Income Tax Regs.  The most important factor is the extent of the taxpayer's efforts to determine the proper tax liability.  Id.

As previously stated, respondent bears the burden of production with respect to all penalties.  See sec. 7491(c).  The burden imposed by section 7491(c) is only to come forward with evidence regarding the appropriateness of applying a particular addition to tax or penalty to the taxpayer.  Respondent need not negate all defenses to the additions or penalties.  See Higbee v. Commissioner, supra at 446.  Respondent has met his burden with respect to his claim of negligence by establishing that petitioner understated his tip income and that petitioner did not keep a tip diary.  Further, petitioner has not shown that there was reasonable cause for his failure to claim his additional tip income for taxable year 2000.  Therefore, we sustain respondent's

determination of the penalty under section 6662(a) and (b)(1) for taxable year 2000.[3]

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered

under Rule 155.

---

[3]As previously noted, respondent concedes that any deficiency should take into account the adjusted amounts reported on petitioner's Form 1040X and application of the 15.4-percent tip rate. The accuracy-related penalty pursuant to sec. 6662(a) and (b)(1) for taxable year 2000 will also take into account these adjusted amounts.