THE NEW YORK, PHILADELPHIA & NORFOLK
RAILROAD COMPANY *vs.* WILLIAM WALDRON

*Witnesses: arrest and holding of—. False arrest and imprisonment; assault and battery. Railroad conductors: duty to passengers; liability of railroads. Court of Appeals: points considered by. Judgments: interest.*

False arrest is a wrong in the nature of assault and battery, and consists of imposing by force or threat an unlawful restraint upon a man's freedom of locomotion.      p. 448

The right and power to imprison witnesses who fail to furnish security for their appearance to testify against a person accused of crime, referred in section 13 of Article 35 of the Code of Public General Laws, relates only to commitments by magistrates.      p. 450

A conductor on a railroad has no right to arrest or cause a passenger to be arrested and committed as a witness, in order to secure his attendance at the trial of an accused party.

p. 454

For such an act the railroad company is responsible, even though the conductor had not been authorized to make the arrest by the defendant company.    p. 452

False imprisonment constitutes a form of personal indignity and insult.    p. 453

The Court of Appeals, in deciding appeals from courts of law, will decide no point which does not appear by the record to have been raised and decided by the Court below.    p. 454

*Quære*: Whether interest should be allowed from the date of a verdict, or from the rendition of the judgment.    p. 454

*Decided November 25th, 1911.*

Appeal from the Circuit Court for Worcester County (JONES and TOADVIN, JJ.).

The cause was submitted on briefs to BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Joshua W. Miles* and *Henry L. D. Stanford* filed a brief for the appellant.

*Ellegood, Freeny and Wailes* and *Hope H. Barroll* filed a brief for the appellee.

PATTISON, J., delivered the opinion of the Court.

This is an action for false arrest and imprisonment brought by the appellee, William Waldron, against the appellant, the New York, Philadelphia and Norfolk Railroad Company. The case was tried before a jury upon issues joined on plea of not guilty, and the result was a verdict and judgment for the plaintiff, from which the defendant has appealed.

There are twelve bills of exceptions in the record; one relates to the ruling of the lower Court on the prayers for instructions to the jury, and the other eleven to the rulings of the Court upon questions of evidence.

The plaintiff offered three prayers, the defendant, four. To the granting of the plaintiff's prayers the defendant

objected, "both generally and because there was no legally sufficient evidence to sustained them." All of the plaintiff's prayers were granted, while two of the defendant's prayers were granted and two rejected. To the ruling of the Court in granting the plaintiff's prayers, and in the rejection of the defendant's third and fourth prayers the defendant excepted.

The defendant's fourth prayer asks the Court to instruct the jury that under the pleading and evidence in the case there was no evidence legally sufficient to entitle the plaintiff to recover; and by the other rejected prayer of the defendant (the third prayer) the Court was asked to instruct the jury "that there is no evidence legally sufficient to prove that any of the agents or officers of the defendant corporation, the New York, Philadelphia and Norfolk Railroad Company, was ever authorized by said company to do or commit any of the acts complained of by the plaintiff, or that the said defendant company ever adopted or ratified said acts of said officers or agents, and the verdict of the jury must therefore be for the defendant."

The plaintiff testified that on Saturday, the 30th day of November, 1907, while holding a ticket entitling him to passage upon the defendant's steamer and over its road and its connecting roads from Norfolk to Philadelphia, he boarded its steamer at Norfolk, from whence he went to Cape Charles, at which point he entered the car of the defendant. That after taking a sea therein two young men, strangers to him, but whose names as he afterwards learned were McDorman and Freeze, entered the car, and after being seated a short while, one of them took from his pocket a bottle of whiskey. They drank from the bottle and then passed it to a number of others in the car, including the witness, who drank from it. The witness stated, however, that it was the first drink he had taken that day and would not have taken that only they insisted on it. McDorman and Freeze then separated, McDorman taking a seat to himself with his head leaning up against the window. While in this position Freeze approached

444    N. Y. P. & N. R. R. CO. vs. WALDRON.

Opinion of the Court.    [116

and struck McDorman, breaking the window glass. At this time Truitt, the conductor, was not in the car, but when he learned of the glass being broken he told Freeze that he would have to pay for it, which he did. In his conversation with the conductor, Freeze charged McDorman and others in the car, including the plaintiff, with stealing his money and became boisterous and profane in his language. While the plaintiff was sitting by himself, and after the train had left one of the stations on the road, Kellar's, as the witness thought, the conductor approached him and told him that he had intended to have Freeze arrested at the station just passed, but that he couldn't find any officer and that he had to take him to Princess Anne; that he had phoned up or wired to Princess Anne for the sheriff to arrest him there. When the train was near Princess Anne the conductor told the plaintiff that he would have to have him as a witness and wrote down his name and address in Philadelphia, which were given to him by the plaintiff, and was told by the plaintiff that he would come down at any time he would notify him. Later, and just as the train was slowing up for Princess Anne, the conductor said to the plaintiff: "You have got to go with them," meaning the officers who were to arrest Freeze; to which the plaintiff replied: "Are you going to lock me up?" The conductor said, "Yes, we shall have to hold you as a witness," to which the plaintiff replied: "All right, I will have to go, that is all." When the train stopped at the station the sheriff and, as he supposed, his deputy came into the car, and as the deputy with Freeze approached the plaintiff the conductor said: "You take this man along as witness; there is no charge against him, but we have got to have him as a witness." The officer said to him: "Come with me," and he went. They went from the station to the jail. When they reached the jail they entered and went so far as the corridor. Freeze was placed in a cell. The sheriff then asked the plaintiff if he could give any bail, as there was no charge against him. The plaintiff replied that he

knew no one in Princess Anne, that it was the first time he was ever in the town, but said he had some money, seventy-five dollars, "if that would do any good." He was told by the sheriff to put up fifty dollars for his appearance when needed. He thus gave to the sheriff fifty dollars, for which the sheriff gave to him a receipt and he went to the hotel. This was about one o'clock Sunday morning, the hour for the arrival of the train at Princess Anne being about twelve o'clock at night. On Sunday morning he again saw the sheriff, at which time the sheriff returned to him his money and released him from the necessity of returning as a witness. He then went to the hotel and paid his bill and from there he went to the station, where he bought a ticket to Delmar, paying therefor sixty-five cents. The conductor had taken the coupon off that part of the ticket that carried him to Delmar, the ticket was good from Delmar to Philadelphia.

S. Upshur Long, the sheriff of Somerset county, referred to in plaintiff's testimony, on behalf of the plaintiff, testified, "That he received a message to go to what is called the midnight train that night (the occasion referred to in plaintiff's testimony) and that he went there as sheriff somewhere between twelve and one o'clock. That on his way to the depot he met John H. Packard, at that time bailiff of Princess Anne, who was also going out to the depot, he having been asked, as he stated, to go to the station for the same purpose for which the sheriff was going. When they reached the depot the conductor inquired if the sheriff or police were there, and upon being told that they were they were invited by the conductor aboard the train and were shown "this fellow Freeze that he had a charge against," also Waldron, the plaintiff, whom the conductor said he wanted to hold as a witness. Thereupon Waldron, the plaintiff, was taken to and in jail by Mr. Packard. That the plaintiff put up fifty dollars as bail for his appearance as a witness when needed.

Packard, who at the time of the occasion referred to in the testimony above stated, was bailiff of Princess Anne, and at the time of the trial of the case below was in the employ-

ment of the defendant as fireman, testified, on behalf of the defendant, that after entering the car he and the conductor went to the north end of it and there the conductor said, "That is the man there; this other was witness to the whole thing." He did not remember that the conductor said more, and from that he told the plaintiff to come on and the plaintiff went with him. He did not recall that the conductor said there was no charge against the plaintiff, but remembered that *he* told the plaintiff there was no charge against him, that he was only held as a witness.

Oscar M. Jones, telegraph operator at the station, testified "That he received a message in reference to said occurrence from Conductor Truitt, and after phoning it up town the message was destroyed, but to the best of his knowledge the message was 'Have officer arrival of No. 50 at Princess Anne.' "

William G. Truitt, offered by the defendant, testified that on the 30th day of November, 1907, he was and had been for twenty-six years conductor on defendant's road. That he remembered the occasion when on the 30th day of November, 1907, there was a disorderly passenger. Freeze, on his train. That he first learned of the misbehavior or misconduct of this passenger when at or near Nassawadox, a station about nineteen miles above Cape Charles. That at the time of the assault made by Freeze on McDorman he was in the Jim Crow car. That when he returned to the car in which Freeze was seated he was pointed out to him by the brakeman. He spoke to Freeze of his misconduct and told him that he would have to put him off the train and that he would also have to pay for the window glass, which he did. He accused many of those in the car of robbing him, but finally quieted down. Later, however, he charged the plaintiff with robbing him, about which time he, the conductor, sent a message from Hallwood to the operator at Princess Anne, in which he said: "Please have officer at train on arrival of No. 50." Freeze continued his disorderly conduct until he got near to Kings Creek, Md., among other

things, threatened the life of the plaintiff and accusing the plaintiff of robbing him. Finally he said to the plaintiff: "My friend, I am going to have that fellow taken off at Princess Anne, and I would suggest that you get off there as a witness." Plaintiff did not say whether he would or would not get off. When the train arrived at Princess Anne the conductor stepped to the door and asked if the officer was there, and Mr. Long and Mr. Packard stepped forward. With them he entered the car and said: "Gentlemen, here is the man," and walked back to where Freeze was, and further said: "Here is the man who raised all this disturbance, and here is another man who I have suggested to get off and appear as a witness." That he did not say to the sheriff, referring to Waldron, "Take this man off," or "Take this man along as a witness, I have no charge against him." He denied saying, "Yes, we shall have to hold you as a witness" to Waldron's asking him, "Are you going to lock me up." He also denied having any conversation with the plaintiff in which he asked plaintiff about his address; that he did not know the man's name, where he lived or anything about it. The conductor did not hear the officer tell the plaintiff to come along. That he made the suggestion to Waldron to get off as a witness to protect him, as Freeze had threatened his life and accused him of robbing him. That he sympathized with Waldron and felt sorry for him and wanted to protect him. That Freeze was full of whiskey. That Freeze was disorderly both in Virginia and in Maryland, kept up his disorderly conduct after leaving Peninsula Junction until he got to Princess Anne. Truitt was then asked by the defendant company. "Now, then, Mr. Truitt, you have stated that you were the conductor of the New York, Philadelphia and Norfolk Railroad Company, and you were the conductor at the time of the occurrence to which you have referred. Please state what, if any, authority you have ever had from the railroad company or from any of its officers to arrest or take into custody or cause to be arrested or taken into custody any passenger as a wit-

ness to any criminal occurrence or disorder occurring on your train?" To which question the plaintiff objected, and the Court sustaining the objection, the witness was not permitted to answer. To this ruling of the Court the defendant excepted, and this forms the ninth bill of exceptions. We refer to this exception at this time because it will be considered and discussed in connection with the ruling upon the defendant's rejected prayers.

In our opinion, the Court below committed no error in rejecting the third and fourth prayers of the defendant.

There is in this case evidence sufficient to go to the jury tending to show a false arrest and imprisonment of the plaintiff procured by the servant of the defendant under circumstances that render the defendant liable therefor to the plaintiff.

"False imprisonment is a wrong akin to the wrong of assault and battery, and consists in imposing by force or threat an unlawful restraint upon a man's freedom of locomotion." *Cooley on Torts,* 196; *Gillingham* v. *Ohio R. R. Co.,* 35 W. Va. 595. And as was said in *Kirk & Son* v. *Garrett,* 84 Md. 409: "False imprisonment consists in the unlawful detention of one against his will." "It is the unlawful restraint of a man's liberty by imprisonment or by words and array of force." *Tomlin* v. *Hildreth,* 65 N. J. Law, 438.

The plaintiff, with others, while a passenger upon the train of the defendant, witnessed the disorder produced by the misconduct of another passenger, a stranger to him, in the car in which the plaintiff was seated. The plaintiff was in no way a party to the disorder, nor was he in any wise responsible therefor. The conductor after deciding to prosecute the party creating the disorder, obtained from the plaintiff his name and address so that he could communicate with him should he be needed as a witness in the prosecution of the offender. The plaintiff expressed his willingness to appear as a witness when wanted and notified, but notwithstanding this readiness and willingness on his part to attend the trial and testify against the accused when needed, he was

told by the conductor that he would be held as a witness and to secure his attendance he would be "locked up," and when the train arrived at Princess Anne the plaintiff was pointed out by the conductor to the officers who were there to meet the train upon its arrival, pursuant to the order wired by the conductor to the agent at that station, and the officers were told by the conductor to hold him as witness to testify against the disorderly passenger. The officers took him and carried him to jail, at which place he was asked by them, or one of them, if he could give bail for his appearance as a witness when his presence should be needed at the trial of the disorderly passenger. Upon being told that he could not, as he was a stranger in the town and knew no one, he was then released upon his depositing with one of the officers fifty dollars to secure his appearance as a witness at such trial.

This Court in the case of *Hall v. Somerset County,* 82 Md. 620, quoted approvingly from LORD HALE, 2 H. P. C. 282, in which that author, in enumerating the compulsory methods by which witnesses can be brought in to testify, states that "The more ordinary and more effectual means (employed for such purposes), the justices or coroner that take the examination of the person accused, and the information of the witnesses, may at that time, or at any time after, and before the trial, bind over the witnesses to appear at the sessions, and in case of their refusal either to come or to be bound over, may commit them for their contempt on such refusal."

This Court in that case (*Hall v. Somerset County*) further stated that section 13 of Article 35 of the Code, which provides for the payment of fees for witnesses committed to prison upon their failure to find security for their appearance to testify against the accused, "clearly recognizes the power of a *magistrate* to commit a witness in order that his attendance to testify against a person accused of crime may be secured, after the witness fails to give such reasonable security for his appearance as may be demanded of him."

This statute, however, which provides for the payment of fees of imprisoned witnesses, refers only to such as are committed by magistrates. Therefore, the recognition therein found of the right to imprison witnesses upon their failure to find security for their appearance to testify against a person accused of crime, can extend no further than the right of the magistrate to commit in such cases.

But whatever may be the power and authority, if any, of an officer under extreme conditions and circumstances, to hold temporary, in restraint of his liberty, a person as a witness to testify against an accused person, such authority or power does not exist in this case. The nature and character of the offence and the conditions and circumstances thereof and the relations existing between the parties do not warrant the arrest and imprisonment of the plaintiff, procured as it was by the servant of the defendant, in order to secure his attendance as a witness at the trial of the accused party.

"The illegality of the arrest and the unlawfulness of the detention are indispensable elements in this form of action." *Kirk & Son.* v. *Garrett, supra.* In our opinion, these indispensable elements are found to exist in this case. But by the defendant's rejected third prayer the Court below was asked to instruct the jury that there was no legally sufficient evidence that the conductor, servant of the defendant company, was ever authorized by the defendant to commit the acts complained of or that such acts were ever adopted or ratified by the defendant company.

We will now consider the ruling of the Court in refusing to grant this instruction. The plaintiff having purchased a ticket from the defendant company entitling him to transportation from Norfolk, Va., over the lines of the defendant and its connecting lines, to the City of Philadelphia, he became a passenger upon the car of the defendant, and was such a passenger at the time of the acts complained of in this case. As a passenger he was entitled to all the rights, privileges and protection which the law accords to passengers and subject to the duties and liabilities which the law imposes on

a carrier for the safety and proper treatment of its passengers.

In the case of *Stewart* v. *Brooklyn and Crosstown R. R. Co.,* 90 N. Y. 590, the Court there said: "The trial Court dismissed the plaintiff's complaint on the ground that the defendant's servant in assaulting the plaintiff (a passenger in the car) was not acting within the scope of his employment, but attacked the plaintiff to gratify some wicked and malicious purpose of his own. Had the person assaulted been one to whom the defendant owed no duty, the dismissal of the plaintiff's complaint would probably have been correct; but the rule which applies in such a case has no application as between a common carrier and his passenger, in such a case a different rule applies. And this Court in the case of *Maryland and P. R. Co.* v. *Tucker,* 115 Md. 43, said in the case of *Stewart* v. *Brooklyn and Crosstown R. R., supra,* "it was held that a carrier undertakes to protect his passengers while, being conveyed, against the misconduct of its own servants while engaged in executing the contract."

In the case of *Haver* v. *Central R. R. Co.,* 62 N. J. 282, which was an action brought against the carrier for the assault made by a brakeman upon a passenger, the Court there said: "The case now before the Court depends not upon the law of liability of a master for the acts of its servant, but upon the duty imposed on the railroad company in the carriage of the plaintiff as a passenger. The duty of a carrier of passengers is to safely and securely carry persons who bear to it the relation of passengers. The carrier is under obligations to carry the passenger therein to the end of his route, to protect him against assault and other ill-treatment by those employed by and under the carrier's control while on the way."

In the case of *The New Jersey Steamboat Company* v. *Brockett,* 121 U. S. 637, JUSTICE HARLAN, speaking for the Court, said: "The plaintiff was entitled in virtue of his contract as passenger to protection against the misconduct or

negligence of the carrier's servants.   The misconduct or neg-
ligence while transacting the company's business and when
acting within the general scope of their employment is of
necessity to be imputed to the corporation which constituted
them agents for the performance of the contract with the
passengers.   Whether the act of the defendant be one of
omission or commission, whether negligent or fraudulent, if
it is done in the *course* of his employment, it makes no dif-
ference that the master did not authorize or even know of
the defendant's act or negligence.   Or even if he disapproved
or forbade it he is equally liable if it be done in the course of
his servant's employment.   This rule is founded upon public
policy and convenience."

And this Court in the case of the *B. and O. R. R. Co.* v.
*Cain,* 81 Md. 105, held that, "If the plaintiff had been guilty
of no breach of the peace, his arrest at the instance of the
conductor was unlawful, and having been made in the defend-
ant's depot whilst the plaintiff, a passenger, was still entitled
to be protected by the defendant against assaults and inju-
ries by the defendant's own employes, if wrongfully made by
or at the request of the defendant's own servants *whilst they
were in and about the performance of their prescribed duties,*
the master would be liable."

From these authorities, it will be seen that the defendant
company is liable for the acts of its conductor in ordering
and procuring the arrest and imprisonment of the plaintiff,
which were committed in the course of his employment, even
though he was not authorized to do so by the defendant com-
pany; and thus the third and fourth prayers of the defend-
ant, as well as the testimony offered in the ninth exception,
were properly rejected.

The only objection urged against the plaintiff's first prayer
is, that it assumes there was no evidence that the conductor
wired the agent at Princess Anne to have "*officers*" meet the
train at that point, when, as the defendant contends, the evi-
dence was that he wired the agent to have "*officer*" meet the
train, etc.   The conductor testified that the word "officer"

and not the word "officers" was used by him in the telegram; the agent to whom the telegram was sent was unable to give the exact language. But whether the word "officer" or "officers" was used, the sending of the dispatch resulted in two officers meeting the train. This we think is an unimportant variance, should any exist at all, and does not render the prayer bad. We think the Court committed no error in granting the prayer.

In the second prayer of the plaintiff the jury is instructed that "it is the duty of the defendant to use all reasonable care to protect the plaintiff from personal injury and insult." This, the defendant contends, is stating an abstract proposition of law based on a state of facts not shown to exist in this case. It contends that no personal injury was done or insult offered the plaintiff by reason of his being held and detained under conditions and circumstances which we hold herein constitute false arrest and imprisonment. We can not adopt this contention of the defendant that no personal injury has been done or personal insult has been offered the plaintiff by his false arrest and imprisonment. Not only was it a personal indignity and insult, but a personal injury as well. "A personal injury includes libel, slander, criminal conversation, seduction and malicious prosecution; also an assault, battery, false imprisonment, or other actionable injuries to the person." Words and Phrases, Vol. 6, page 5341.

The first eight and the tenth and eleventh exceptions found in the record are to the rulings of the Court in permitting the plaintiff to show that he was taken to the jail and security demanded of him by the officers holding him as a witness under the direction of the defendant's servant, and the fact that he deposited with said officers, as security for his appearance as a witness, the sum of fifty dollars. The plaintiff in this case was taken into the custody of the officers upon the request of and at the direction of Truitt, the conductor of the defendant company, to hold him as a witness to testify against Freeze, who was at the same time arrested upon the request and direction of Truitt charged with disorderly con-

duct.  The plaintiff's unlawful detention commenced at the time that he was so taken into the custody of the officers.  It was then that his liberty was restrained, and in a legal sense he was imprisoned from that time.  This was at twelve o'clock Saturday night.  With directions from the conductor to hold the plaintiff as a witness, what was he to do but to carry him to jail or take from him security for his appearance as a witness?  These, as it would seem, were unavoidable incidents to his being held as a witness as directed by defendant's servant, and these unavoidable incidents should have been known and considered by the conductor at the time that he gave the direction to hold the plaintiff as a witness.  We think this evidence was properly admitted.

The point is made by the defendant that the judgment in this case is erroneously entered for the reason that interest is allowed thereon from the date of the verdict and not from the date of the rendition of the judgment.  This question was not presented to or passed upon by the Circuit Court, but the point is made for the first time in this Court; thus the question is not properly before this Court to be considered by it.  *Anders* v. *Devries,* 26 Md. 222.

From what we have said we find no errors in the rulings of the Court below and will therefore affirm its judgment.

> *Judgment affirmed, with costs to the appellee.*