BONNIE A. MILLER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 21113-87.      Filed September 13, 1989.

*S. Ronald Ellison,* for the petitioner.
*Robert E. Williams, Jr.,* for the respondent.

## OPINION

WELLS, *Judge:* Respondent determined a deficiency of $249,106 and an addition to tax pursuant to section 6661[1] of $62,254 against petitioner for 1983.

The instant case stems from petitioner's receipt of $525,000 in settlement of two defamation actions. We must decide (1) whether the settlement proceeds should be excluded from gross income pursuant to section 104(a)(2), (2) whether any portion of the proceeds characterized as punitive damages should also be excluded pursuant to section 104(a)(2), and (3) whether petitioner is liable for the section 6661 addition to tax.

The facts are fully stipulated. We hereby incorporate by reference the stipulation of facts and attached exhibits.

Petitioner resided in Westminister, Maryland, when she filed her petition.

### *The Two Civil Actions*

On or about March 28, 1979, petitioner commenced an action (the first action) by filing a declaration (the declaration) in the Superior Court of Baltimore City. The declaration named Cary Wellington, Sidney Rapkin, Publication Press, Inc. (Publication Press), and Graphic Arts Finishing Co. (Graphic Arts), as defendants. According to the declaration, Publication Press and Graphic Arts had employed petitioner as personnel manager. Mr. Wellington was chairman of the boards of both corporations, while Mr. Rapkin was the financial vice president of the corporations.

The declaration alleged a conspiracy by the defendants to accuse petitioner of embezzlement so that a bribery scheme could be concealed. Publication Press and Graphic Arts (collectively, the companies) provided printing services to various Government agencies. The companies had difficulty making timely delivery of printed material to the agencies. Sometime in 1977, the companies began paying Government employees bribes for undated or backdated receipts for printed material. Through early 1979, the companies paid approximately $38,000 in bribes. Around March 1979, the

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 and all Rule references are to the Tax Court Rules of Practice and Procedure.

defendants decided to shield themselves from responsibility for the bribery scheme by firing petitioner and accusing her of embezzling the $38,000. The companies fired petitioner on March 23, 1979.

Count I of the declaration alleged that Mr. Wellington accused petitioner of embezzlement in the presence of Mr. Rapkin and two other employees of the companies. Mr. Wellington made the accusation the day petitioner was fired. Counts II through VIII of the declaration alleged that Mr. Wellington told various employees of the companies that petitioner had been terminated for embezzlement.

Counts IX and X of the declaration alleged that Mr. Rapkin made similar allegations respecting petitioner to various employees of the companies.

Count XI of the declaration alleged that Mr. Wellington and Mr. Rapkin told the Internal Revenue Service that petitioner had received embezzlement income from the companies.

Count XII of the declaration alleged that the companies had made a claim on petitioner's fidelity bond, claiming a loss because of petitioner's embezzlement. Count XIII of the declaration alleged that the defendants had engaged in "extreme and outrageous conduct" that resulted in petitioner's emotional distress.

On or about November 30, 1982, petitioner commenced a second action (the second action). She filed a declaration (the second declaration) in the Circuit Court for Baltimore County. The second declaration named the Continental Insurance Co. (Continental), The Glen Falls Insurance Co. (Glen Falls), Underwriters Adjusting Co. (Underwriters), Barry Bach, William Butler, David Gischel, Publication Press, and Graphic Arts as defendants.

According to the second declaration, Glen Falls was the liability insurer for the companies. Continental was the corporate parent of Glen Falls, while Underwriters was another Continental subsidiary and adjusted claims against Glen Falls (collectively, Glen Falls, Continental, and Underwriters are referred to as the insurance company defendants). Mr. Bach served as an attorney for Underwriters. Mr. Butler was the deliveryman for the companies who paid the bribes for undated and backdated receipts.

Petitioner's second declaration alleged that the insurance company defendants knew that the companies lacked a meritorious defense to the first action and that the insurance company defendants therefore conspired to defame petitioner so that her testimony at trial would be less credible. The second declaration also alleged that the insurance company defendants hired Mr. Butler to discredit petitioner.

Count I of the second declaration alleged that Mr. Butler told a group at "Shinberg's Bar" that petitioner had "unchaste" relations with the "Cash brothers." The Cash brothers were independent contractors who built skids and pallets for the companies. Mr. Butler also told the group that petitioner had assisted the Cash brothers in overcharging the companies. Count II of the second declaration alleged that Mr. Butler made similar allegations in the companies' warehouse.

Count III of the second declaration alleged that Mr. Butler told another employee of the companies, Mr. Gischel, that petitioner had forged receipts for the delivery of skids and pallets from the Cash brothers. Count IV of the second declaration alleged that Mr. Gischel repeated the statement alleged in Count III to Mr. Newcomer, whose name had allegedly been forged by petitioner.

Count V of the second declaration alleged that various defendants had been negligent in employing Mr. Butler to investigate petitioner's first action.

Count VI of the second declaration alleged that defendants' extreme and outrageous conduct resulted in emotional distress to petitioner.

Petitioner's first action went to trial, and on October 6, 1983, a jury awarded petitioner $950,000, consisting of $500,000 in compensatory damages and $450,000 in punitive damages. No portion of the jury award was attributable to Count XIII of the first declaration, i.e., petitioner's claim for the intentional infliction of emotional distress.

After the jury award, petitioner and the defendants in both actions entered into settlement negotiations. The parties reached agreement. On or about November 22, 1983, petitioner signed a general release discharging all defendants in both actions from liability, in exchange for

$900,000 (the settlement proceeds). Petitioner filed an order of satisfaction in the first action and dismissed the second action. In December 1983, petitioner received $525,000 of the settlement proceeds (the net settlement proceeds), after petitioner's attorneys had deducted legal fees and costs of $375,000 from the settlement proceeds.

*Section 104(a)(2)*

We must decide whether the net settlement proceeds[2] received by petitioner in 1983 constitute gross income. Generally, a taxpayer must include in gross income "all income from whatever source derived." Sec. 61(a). One exception to this rule is provided by section 104(a)(2), which excludes from gross income "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries * * * ." Regulations broadly interpret this language as encompassing damages received through the litigation of "tort or tort type rights." Sec. 1.104-1(c), Income Tax Regs. Thus, section 104(a)(2) does not exclude only recoveries for *physical* injury. *Church v. Commissioner*, 80 T.C. 1104, 1106 (1983). Rather, the proper inquiry is whether damages have been recovered for *personal* injury.

Whether damages received through settlement of litigation are excluded under section 104(a)(2) depends upon the *nature* of the claim settled, rather than upon the *validity* of the claim. *Rickel v. Commissioner*, 92 T.C. 510 (1989); *Metzger v. Commissioner*, 88 T.C. 834, 847 (1987), affd. without published opinion 845 F.2d 1013 (3d Cir. 1988); *Seay v. Commissioner*, 58 T.C. 32, 37 (1972). When, as in the instant case, a settlement agreement fails to specify the claim or claims for which payment is made, the intent of the payor is the most important factor determining whether section 104(a)(2) applies. *Rickel v. Commissioner, supra; Metzger v. Commissioner, supra* at 847-848; *Knuckles v.*

[2]In the notice of deficiency, respondent determined that petitioner had received $525,000 of unreported income in 1983, implying that although she had received $900,000 of income, she was entitled to deduct $375,000 of costs and attorneys' fees. Respondent did not determine alternatively that in the event a portion of the settlement proceeds were held to be excluded from gross income, the deduction of a portion of the costs and fees should be disallowed pursuant to sec. 265 or some other provision. Our holding *infra* obviates any need to address the issue.

*Commissioner,* 349 F.2d 610, 613 (10th Cir. 1965), affg. a Memorandum Opinion of this Court.

We find that the defendants paid petitioner the settlement proceeds with the intent of satisfying petitioner's claims for defamation. All but two of the counts in both the first and second declarations allege defamation. One count in the first declaration alleged the intentional infliction of emotional distress, but none of the jury award in the first action was attributable to that count. The second declaration also contained one count alleging the intentional infliction of emotional distress. Yet, in light of the outcome of the first action, we believe the defendants' intent in settling both the first and second actions was to satisfy their liabilities for defamation.

Defamation is an action for personal injury in Maryland. *New York, Philadelphia and Norfolk Railroad Co. v. Waldron,* 116 Md. 441 (1911), 82 A. 709, 714. Because the nature of a taxpayer's claim determines whether damages are excluded under section 104(a)(2), petitioner's recovery is thus excluded from gross income.

In asserting that section 104(a)(2) does not exclude the net settlement proceeds from gross income because the proceeds represent compensation for damage to professional reputation, respondent relies upon our holding in *Roemer v. Commissioner,* 79 T.C. 398 (1982), revd. 716 F.2d 693 (9th Cir. 1983). In *Roemer,* an insurance agent recovered compensatory and punitive damages after successfully prosecuting a defamation action against a credit reporting agency. The agency had issued a defamatory credit report concerning the agent. After the agent failed to report any of the damages as gross income, the Commissioner determined a deficiency. We sustained the deficiency, reasoning that the damages compensated for damage to the agent's business, or lost profits. 79 T.C. at 405-407. The Ninth Circuit Court of Appeals, however, reversed our holding and explained, "We reverse because we have concluded that the tax court's analysis of this matter confuses a personal injury with its consequences and illogically distinguishes physical from nonphysical injuries." 716 F.2d at 696-697.

While this Court examined the pleadings and proof before the State court to determine whether the damages awarded

to the taxpayer were a substitute for lost business profits, the Ninth Circuit rejected the relevancy of this inquiry, reasoning that although personal injury may result in both personal and economic consequences, it remains personal injury for purposes of section 104(a)(2). The Ninth Circuit's inquiry focused upon the nature of the taxpayer's claim. 716 F.2d at 697. The Ninth Circuit concluded that defamation is an action for personal injury under California law and that therefore section 104(a)(2) excluded the taxpayer's recovery. 716 F.2d at 700.

In Revenue Ruling 85-143, 1985-2 C.B. 55, the Commissioner rejected the Ninth Circuit's approach. The Commissioner reasoned as follows: "The characterization of the lawsuit brought by the individual under the law of the particular state where suit was filed should not determine the characterization of the damages received for federal income tax purposes." 1985-2 C.B. at 56. The Commissioner also stated that he would follow this Court's approach in *Roemer* (rather than that of the Ninth Circuit) and determine whether section 104(a)(2) applies by inquiring whether a defamatory statement "is directed at the business and causes loss of business income." 1985-2 C.B. at 56.

In *Threlkeld v. Commissioner,* 87 T.C. 1294 (1986), affd. 848 F.2d 81 (6th Cir. 1988), however, we rejected the approach we had taken in *Roemer.* In *Threlkeld,* the taxpayer had received $300,000 in settlement of a malicious prosecution action. After various concessions, the issue before the court was whether $21,500 received for injury to "professional reputation" should be excluded from gross income pursuant to section 104(a)(2). 87 T.C. at 1297. We held the amount to be excludable and stated that our holding in *Roemer* lacked "a firm foundation in the case law." 87 T.C. at 1304. We expressly embraced the reasoning of the Ninth Circuit with its emphasis on "the nature of the claim," but cautioned that if a judgment or settlement were not "clearly allocated to an identifiable claim," an examination of pleadings and proof would be necessary to ascertain whether or not a recovery flowed from personal injury. 87 T.C. at 1305-1306. We concluded that because malicious prosecution is an action for personal injury under Tennessee law, the recovery in that case was excludable. Our opinion

offers the following test for determining whether a claim is for personal injury: "Exclusion under section 104 will be appropriate if compensatory damages are received on account of any invasion of the rights that an individual is granted by virtue of being a person in the sight of the law." 87 T.C. at 1308. The approach adopted in *Threlkeld*, i.e., a focus upon the nature of an injury as opposed to its consequences, has been reaffirmed in subsequent cases. E.g., *Rickel v. Commissioner, supra; Thompson v. Commissioner,* 89 T.C. 632, 648 (1987), affd. 866 F.2d 709 (4th Cir. 1989); *Metzger v. Commissioner, supra* at 857-858.[3]

Respondent asks that we reconsider the rule set forth in *Threlkeld* and again draw a distinction between damage to personal reputation and damage to professional reputation. We decline, however, to revert to the approach we took in *Roemer.* Given the approach of the appellate courts[4] and that of this Court since *Threlkeld,* we reject respondent's request to reconsider *Threlkeld.* Section 104 does not distinguish between physical and nonphysical injuries (*Church v. Commissioner,* 80 T.C. at 1106), and we see no sound reason to construe the statute in such a way as to not afford the same tax treatment to recoveries for all types of "personal" injury regardless of consequence. We therefore hold that section 104(a)(2) excludes the net settlement proceeds from gross income.

### Punitive Damages

Respondent next argues that section 104(a)(2) does not exclude punitive damages from gross income and that all of

---

[3] In *Byrne v. Commissioner,* 90 T.C. 1000 (1988), revd. 833 F.2d 211 (3d Cir. 1989), the taxpayer received $20,000 in settlement of various claims against her former employer, including claims stated in a complaint filed by the Equal Employment Opportunity Commission. We excluded only one half of the taxpayer's recovery pursuant to sec. 104(a)(2), reasoning that the taxpayer's claim under the Fair Labor Standards Act could be analogized to both tort and contract actions and that the parties' settlement resolved "a range of issues between them —including, potentially, claims based on their employment contract." 90 T.C. at 1009-1010. The Third Circuit Court of Appeals disagreed with our conclusion that contract-type claims were settled and excluded all of the taxpayer's recovery. *Byrne* is thus consistent with *Threlkeld* in that it focuses upon the nature of a taxpayer's claim. *Byrne,* however, does not otherwise apply to the facts of the instant case because petitioner never asserted a claim which could be characterized as contractual.

[4] Although *Thompson v. Commissioner,* 89 T.C. 632 (1987), affd. 866 F.2d 709 (4th Cir. 1989), may not be so "squarely in point" that the rule of *Golsen v. Commissioner,* 54 T.C. 742, 756-757 (1970), affd. 445 F.2d 985 (10th Cir. 1971), should be brought into play, we note the Fourth Circuit's apparent general agreement with this Court's current approach.

the net settlement proceeds are taxable because petitioner failed to establish the portion of the net settlement proceeds which represents excludable compensatory damages. We reject respondent's argument because the statutory language excludes from gross income both compensatory and punitive damages received on account of personal injuries.

Section 104(a)(2) excludes from gross income "any damages received * * * on account of personal injuries." Congress enacted the predecessor of section 104(a)(2) as section 213(b)(6) of the Revenue Act of 1918. Pub. L. 65-254, 40 Stat. 1057, 1066. By that time, the availability of punitive or exemplary damages had long been established. Note, "Exemplary Damages in the Law of Torts," 70 Harv. L. Rev. 517, 518-520 (1957). Congress, aware of that fact, could have excluded only "compensatory damages" or provided that only damages received "as compensation for" personal injuries be excluded. Cf. *Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. __ , __ n. 20, 57 U.S.L.W. 4985, 4990 n. 20 (June 26, 1989) (Framers of the Bill of Rights, aware of punitive damages, could have subjected them to Eighth Amendment limitations if they had so intended.). It did neither, and the plain meaning of the broad statutory language simply does not permit a distinction between punitive and compensatory damages. See *Crane v. Commissioner*, 331 U.S. 1, 6 (1947) ("the words of statutes—including revenue acts—should be interpreted where possible in their ordinary, everyday senses."). Thus, we read "any damages" to mean "all" damages, including punitive damages. Webster's Third New International Dictionary (1981).

In *Burford v. United States*, 642 F. Supp. 635 (N.D. Ala. 1986), the court held, as we do, that the statutory language is susceptible of only one reasonable interpretation. The court held that section 104(a)(2) excluded an award in a wrongful death action despite the award's characterization as "punitive." The court explained,

The starting place in the construction of any statute is with the language of the statute itself. The clear import of "any damages received * * * on account of personal injuries" would seem to express clearly the Congressional intent to exclude wrongful death proceeds—regardless of

whether those proceeds are classified as compensatory or punitive—from gross income. * * * [642 F. Supp. at 636.]

At one time, the Commissioner also viewed the statute as free of ambiguity. Revenue Ruling 75-45, 1975-1 C.B. 47, stated the following:

Section 104(a)(2) excludes from gross income "the amount of *any* damages received (whether by suit or agreement) *on account of* personal injuries or sickness" * * * . Therefore, under section 104(a)(2) any damages, whether compensatory or punitive, received on account of personal injuries or sickness are excludable from gross income. [Emphasis in revenue ruling.]

In Revenue Ruling 84-108, 1984-2 C.B. 32, 34, the Commissioner reversed his position and stated that section 104(a)(2) does not exclude punitive damages from gross income. The Commissioner relied primarily on *Commissioner v. Glenshaw Glass Co.,* 348 U.S. 426 (1955). See also Rev. Rul. 85-98, 1985-2 C.B. 51. As pointed out by the court in *Burford,* however, *Glenshaw Glass* does not support respondent's position. *Glenshaw Glass* involved two-thirds of treble damages recoveries for violations of Federal antitrust laws and a punitive damages recovery for fraud. The taxpayers had not received any recoveries on account of personal injuries, and thus the predecessor of section 104(a)(2) was not in issue. *Burford v. Commissioner,* 642 F. Supp. at 637.

Revenue Ruling 84-108, *supra,* also reasons that punitive damages are not awarded "on account of" personal injury, because they are "determined with reference to the defendant's degree of fault." 1984-2 C.B. at 34. The Commissioner has given the statute a strained and unnatural interpretation. Webster's defines the phrase "on account of" as: "For the sake of," "by reason of," or "because of." Webster's Third New International Dictionary (1981). These phrases suggest causation. Punitive damages result from both personal injury and a defendant's culpability. Without the "invasion of * * * rights" referred to in *Threlkeld,* punitive damages are unavailable, and most jurisdictions require some amount of actual damages before punitive damages may be awarded. *Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.,* 57 U.S.L.W. at 4991 n. 24; W. Prosser and W. Keeton, Torts, sec. 2, p. 14 (5th

ed. 1984). Thus, punitive damages are received "on account of" personal injury, although personal injury alone may not justify an award of punitive damages.

Finally, revenue rulings represent only the Commissioner's position on specific factual situations rather than substantive authority (*Stark v. Commissioner*, 86 T.C. 243, 250-251 (1986)), and we disagree with Revenue Ruling 84-108, *supra.*

Recently, in *Rickel v. Commissioner, supra,* an opinion reviewed by the Court, we stated, "Depending upon the nature of the claim, amounts awarded as punitive damages may be included in gross income." 92 T.C. at 521. Our statement strongly implies that punitive damages are not taxable in all circumstances and that their taxability, like the taxability of compensatory damages, depends upon the nature of a taxpayer's claim.

The regulations state: "In addition to the items enumerated in section 61(a), there are many other kinds of gross income. For example, punitive damages such as treble damages under the antitrust laws and exemplary damages for fraud are gross income." Sec. 1.61-14(a), Income Tax Regs. By using the words "such as," the regulation arguably implies that all punitive damages are includable in gross income. We read the regulation, however, as providing that punitive damages are included in gross income in the absence of some statutory provision for exclusion, such as section 104(a)(2). *Graves v. Commissioner*, 88 T.C. 28, 33 (1987), and cases cited therein (Regulations should be interpreted so as to uphold their validity.). Respondent, as well, must have read the regulation in that manner when he issued Revenue Ruling 75-45, *supra.* Thus, there remains the issue of whether punitive damages awarded in an action for personal injury fall within the general rule of inclusion or are, rather, shielded by section 104(a)(2)'s umbrella. As discussed above, we believe the statute's broad language covers both components of a taxpayer's recovery.

We are mindful that statutes excluding items from gross income are to be narrowly construed. *Silverman v. Commissioner*, 28 T.C. 1061, 1067-1068 (1957), affd. 253 F.2d 849 (8th Cir. 1958). Yet, we should not disregard the plain meaning of a statute except to prevent an absurd result or

one that is contrary to legislative intent. *United States v. American Trucking Assns., Inc.,* 310 U.S. 534, 543 (1940); *Abeles v. Commissioner,* 91 T.C. 1019, 1028 (1988); *Zinniel v. Commissioner,* 89 T.C. 357, 362 (1987), affd. 883 F.2d 1350 (1989).

Including punitive damages within the ambit of section 104(a)(2) does not produce an absurd result. Punitive damages have served as a means of compensating plaintiffs for intangible harm and for costs and attorneys' fees. W. Prosser and W. Keeton, *supra,* sec. 2, p. 9; Note, "Exemplary Damages in the Law of Torts," *supra* at 520-521. Although they may serve these purposes to a lesser extent now than in the past, the fact that punitive damages may possess a compensatory aspect renders it reasonable to afford them the protection of section 104(a)(2). It also might explain why Congress in 1918 did not expressly limit the statutory exclusion to compensatory damages.

The legislative history provides no sound basis for disregarding the plain meaning of the statute. The House Report to the Revenue Act of 1918 offered the following justification for the exclusion: "Under the present law it is doubtful whether * * * damages received on account of such injuries or sickness, are required to be included in gross income." H. Rept. 767, 65th Cong., 2d Sess. 9-10 (1918), 1939-1 C.B. 86, 92 (Part 2). While statutes involving exclusions from income are generally narrowly construed, without a clearer indication of Congressional intent, we will not contort the statutory language. We therefore hold that any portion of the net settlement proceeds which represents punitive damages is excluded from gross income by section 104(a)(2).

Our holdings make it unnecessary to address the section 6661 addition to tax determined by respondent.

Accordingly,

*Decision will be entered for the petitioner.*

Reviewed by the Court.

NIMS, CHABOT, PARKER, KÖRNER, SHIELDS, CLAPP,

SWIFT, JACOBS, GERBER, WRIGHT, PARR, WILLIAMS, RUWE, and COLVIN, *JJ.,* agree with the majority opinion.

-------

RUWE, *J.,* concurring: I agree with Judge Wells' opinion and wish to add the following comments with regard to the application of section 104(a)(2) to punitive damages. As pointed out by the majority, punitive damages can only be awarded if there is a valid underlying cause of action. In this case, the underlying cause of action is clearly one for personal injury. The existence of a personal injury is the sine qua non for an award of any kind of damages, be they compensatory or punitive. While the primary purpose of punitive damages may well be to deter egregious conduct on the part of a tort-feasor, egregious conduct standing alone will not entitle a claimant to punitive damages. *Shell Oil Co. v. Parker,* 265 Md. 631, 291 A.2d 64 (1972). Without an injury, there is simply no basis for awarding punitive damages, regardless of how much interest society might have in preventing a reoccurrence of egregious conduct.[1] The fact that both compensatory and punitive damages were requested on the basis of a single alleged tort does not convert a tort action into separate causes of actions. There is still only one personal injury claim *on account of* which damages might be awarded. *Shell Oil Co. v. Parker,* 291 A.2d at 67-69; *Kneas v. Hecht Co.,* 257 Md. 121, 262 A.2d 518 (1970). The punitive damages in this case therefore, being predicated upon the existence of a personal injury, were "received * * * on account of personal injuries."

The very purpose of section 104(a)(2) is to exclude from income amounts which would otherwise have been taxed. The fact that punitive damages represent an accession to wealth and therefore would normally be included in gross income is no reason to preclude the application of section 104(a)(2). Indeed, even certain compensatory damages would seem to be includable in taxable income as an accession to wealth were it not for the existence of section 104(a)(2). For

-------

[1] The fact that Maryland courts "might," in some instances, presume the existence of an injury upon proof of defamation does not mean that punitive damages can be awarded in the absence of personal injury. See *Sindorf v. Jacron Sales Co.,* 27 Md. App. 53, 341 A.2d 856, 864 (1975). But cf. *Shell Oil Co. v. Parker,* 265 Md. 631, 291 A.2d 64 (1972).

example, compensatory damages for personal injury are frequently measured by the injured party's lost future earnings. Such future earnings would have been accessions to wealth and would clearly have been taxable. Even respondent agrees that compensatory damages, that are determined by reference to lost future income, are excludable under section 104(a)(2). Rev. Rul. 85-97, 1985-2 C.B. 50.

By adopting the position expressed in the majority opinion, we avoid producing totally different results under section 104(a)(2), depending upon the characterization of tort damages under various State laws. For example, in *Burford v. United States,* 642 F. Supp. 635 (N.D. Ala. 1986), the cause of action which produced punitive damages at the state court level was an action for wrongful death. (A wrongful death action would seem to involve the ultimate personal injury.) Nevertheless, as the court in *Burford* noted, under Alabama law a wrongful death action could only result in an award of punitive damages as opposed to compensatory damages. Adoption of respondent's position would preclude application of section 104(a)(2) benefits to claimants in Alabama (or any States with a similar statute) while allowing exclusion of damages on account of wrongful death actions in other States even though the universal predicate for any wrongful death action is a personal injury to the decedent. See Rev. Rul. 84-108, 1984-2 C.B. 32.

Adoption of respondent's position would likely produce substantial litigation over the proper characterization of damages resulting from settlements of personal injury actions. Undoubtedly, most personal injury actions are settled prior to trial. It would be reasonable to assume that both plaintiff and defendant would normally seek to avoid characterizing any part of the settlement as punitive damages. The plaintiff's reasons are obvious given the potential tax implications illustrated by this case. Likewise, it is hard to imagine scenarios where a defendant would affirmatively wish to characterize any portion of damages as punitive since such a characterization indicates that the defendant's actions were egregious. In the event that the settling parties fail to distinguish between compensatory and punitive damages in their settlement agreement or respondent disputes the parties' characterization of dam-

ages as compensatory, respondent's position would require a factual determination of which portion of the damages is excludable under section 104(a)(2). That factual determination would probably require presentation of the operative facts regarding the personal injury—the very same type of litigation the parties hoped to avoid by their settlement. I do not think that Congress intended to require such difficult factual determinations when it adopted the very broad language of section 104(a)(2), excluding from income "the amount of *any* damages received * * * on account of personal injuries * * * ." Sec. 104(a)(2). (Emphasis added.)

CHABOT, SWIFT, JACOBS, GERBER, WRIGHT, PARR, WILLIAMS, and WELLS, *JJ.,* agree with this concurring opinion.

---

WHALEN, *J.,* dissenting: I disagree with the majority's conclusion that the amount received by petitioner in settlement of her claims under Maryland law for punitive damages is excludable under section 104(a)(2) as "damages received * * * on account of personal injuries."

As the Supreme Court stated in *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 350 (1974), punitive damages awarded in defamation actions

are *not* compensation for injury. Instead, they are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence. [Emphasis supplied.]

The same is true under Maryland law. *Embrey v. Holly,* 293 Md. 128, 141-143, 442 A.2d 966, 973 (1982). See generally Murnaghan, *"Ave* Defamation *Atque Vale* Libel and Slander," 6 U. Balt. L. Rev. 27 (1976); McCadden, "Punitive Damages in Tort Cases in Maryland," 6 U. Balt. L. Rev. 221 (1977).

Thus, in summary, the amount paid to satisfy petitioner's claims for punitive damages was paid "on account of" the tort-feasor's culpable conduct, not petitioner's personal injuries. Accordingly, it should be included in petitioner's income under section 61(a) as an accession to her wealth, rather than excluded as compensation which makes her personal injuries whole. *Commissioner v. Glenshaw Glass*

*Co.,* 348 U.S. 426 (1955); *Starrels v. Commissioner,* 304 F.2d 574, 576 (9th Cir. 1962); *Villaume v. United States,* 616 F. Supp. 185 (D. Minn. 1985).

In this case, petitioner filed law suits in the State of Maryland seeking both compensatory and punitive damages. She asserted claims for compensatory damages based upon allegations that the defendants had made false and untrue statements about her, and claims for punitive damages based upon allegations that the statements were made "maliciously" and "with reckless disregard for the truth." In settlement of all of her claims, she received a lump-sum payment, after attorney's fees, of $525,000. This settlement payment is fully taxable, unless it qualifies under section 104(a)(2) as an amount paid "on account of personal injuries."

Whether any portion of this payment is "on account of personal injuries," and therefore nontaxable, depends on the nature of each claim made and settled. E.g., *Rickel v. Commissioner,* 92 T.C. 510 (1989). The law of the State under which the claim is made determines the nature of the claim. *Rickel v. Commissioner, supra; Threlkeld v. Commissioner,* 87 T.C. 1294 (1986), affd. 848 F.2d 81 (6th Cir. 1988). In *Threlkeld v. Commissioner, supra* at 1306 n. 6, we noted that:

> It has often been stated that State law creates legal interests and rights, but Federal statutes determine when and how they shall be taxed. *Morgan v. Commissioner,* 309 U.S. 78, 80 (1940); *Burnet v. Harmel,* 287 U.S. 103, 110 (1932). However, Congress may indicate, either expressly or by implication, that the operation of a taxing statute depends upon State law classifications. *Jerome v. United States,* 318 U.S. 101, 104 (1942); *Poe v. Seaborn,* 282 U.S. 101, 110 (1930).
>
> We find that the use of the terms "damages" and "personal injury" by Congress necessarily implies that the exclusion under sec. 104(a)(2) depends, to some degree, upon classification under State law. This is confirmed by use of the term "tort or tort type rights" in the regulations under sec. 104(a)(2).

In analyzing petitioner's claim for compensatory damages for defamation, the majority looks to Maryland law and concludes that "defamation is an action for personal injury in Maryland." (Majority opinion at      .) As authority for its conclusion, the majority cites *New York, Philadelphia and Norfolk Railroad Co. v. Waldon,* 116 Md. 441, 453, 82

A. 709, 714 (1911). I agree with the majority's analysis and holding that the portion of the settlement proceeds which compensates petitioner for her injury due to the defamation is excluded from income pursuant to section 104(a)(2). In my view, the majority also correctly declined to reexamine our opinion in *Threlkeld v. Commissioner, supra.*

Turning to petitioner's claim for punitive damages, however, the majority fails to analyze the nature of her claim under Maryland law. If it had done so, it would have found that under Maryland law petitioner's claim for punitive damages is not an adjunct to or substitute for compensatory damages, but represents an entirely different claim based upon different proof and a different theory than her claim for compensatory damages. The difference between the two is summarized as follows:

Compensatory damages are such as will compensate the injured party for the injury sustained, and nothing more; such as will simply make good or replace the loss caused by the wrong or injury. Black's Law Dictionary, 352 (5th ed. 1979). In other words, they are "damages awarded to a person as compensation, indemnity, or restitution for harm sustained by him." Id. See *McAllister v. Carl,* 233 Md. 466, 451-457, 197 A.2d 140 (1964).

Punitive or exemplary damages are damages on an increased scale, awarded not as the measure of actual loss suffered but "as punishment for outrageous conduct and to deter future transgressions." Black at 352. [Fn. ref. omitted.] See *First National Bank v. Fid. & Dep. Co.,* 283 Md. 228, 232, 389 A.2d 359 (1978); *General Motors Corp. v. Piskor,* 281 Md. 627, 638, 381 A.2d 16 (1977). [*Nast v. Lockett,* 312 Md. 343, 348-349, 539 A.2d 1113, 1116 (1988).]

In Maryland, punitive or exemplary damages thus represent a form of civil punishment. In effect, the term "punitive damages" is somewhat of a misnomer because it is wholly unrelated to the plaintiff's damages. The defendant's "malice" or intentional conduct in the commission of the tort is the essential element for an award of punitive damages. *Nast v. Lockett, supra* at 349-350; McCadden, "Punitive Damages in Tort Cases in Maryland," *supra* at 205-206. As the court stated in *Exxon Corp. v. Yarema,* 69 Md. App. 124, 137, 516 A.2d 990, 997 (1986):

Punitive damages are inherently different from compensatory damages and the reasons for the award of each differ sharply. The award of compensatory damages is an attempt to make the plaintiff whole again

by monetary compensation. In contrast, *the award of punitive damages does not attempt to compensate the plaintiff for harm suffered by him but rather is exemplary in nature and is over and above any award of compensatory damages.* The fundamental purpose of a punitive damages award is to punish the wrongdoer for misconduct and to deter future egregious conduct by others. *Cheek v. J.B.G. Properties, Inc.,* 28 Md. App. 29, 43-44, 344 A.2d 180 (1975). In *Embrey v. Holly,* 293 Md. 128, 442 A.2d 966 (1982), the Court explained: "punitive damages are awarded, over and above full compensation, to punish the wrongdoer to teach him not to repeat his wrongful conduct and to deter others from engaging in the same conduct." 293 Md. at 141, 442 A.2d 966 (quoting *Wedeman v. City Chevrolet Co.,* 278 Md. 524, 531, 366 A.2d (1976)). [Emphasis supplied.]

Maryland courts are reluctant to impose punitive damages, and as a safeguard, they normally require the plaintiff to show actual injury, for which an award is made of at least nominal compensatory damages, before punitive damages will be awarded. *Shell Oil Co. v. Parker,* 265 Md. 631, 643, 291 A.2d 64, 71 (1972). See generally McCadden, "Punitive Damages in Tort Cases in Maryland," *supra* at 206. However, actions for defamation are an exception to this requirement because of the difficulty of showing injury and, at least in the case of libel or slander per se, Maryland courts follow the common law practice of presuming damages and allowing punitive damages with no showing of actual injury. See *Sindorf v. Jacron Sales Co.,* 27 Md. App. 53, 341 A.2d 856 (1975).

The U.S. Supreme Court recognized the inherent difference between compensatory and punitive damages, described above by the Maryland courts, in *Gertz v. Robert Welch, Inc., supra.* In balancing the competing demands of the First Amendment and the interest of the States in compensating the victims of defamation, the Court found that this inherent difference necessitated a more stringent standard of malice as a prerequisite for an award of presumptive or punitive damages. If applicable, a plaintiff must show "actual malice," as defined by the Court in *New York Times v. Sullivan,* 376 U.S. 254 (1964), in terms of knowing falsity or reckless disregard of the truth. See also *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749 (1985); cf. *Sindorf v. Jacron Sales Co., supra.* If this constitutional standard is satisfied, however, a plaintiff can obtain both compensatory and punitive damages in a

defamation action with no proof of actual damages of any kind. *International Brotherhood of Electrical Workers Local 1805 v. Mayo,* 281 Md. 475, 482, 379 A.2d 1223, 1227 (1977).

The Supreme Court again recently recognized the fundamentally different nature of punitive damages in *Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.,* 492 U.S. __ , 109 S. Ct. 2909 (1989). In that case, the Court noted that the practice of awarding punitive damages, "damages far in excess of actual compensation for quantifiable injuries," 492 U.S. at __ , 109 S. Ct. at 2919, was known to the framers of the Eighth Amendment of the U.S. Constitution, and further noted that "punitive damages advanced the interests of punishment and deterrence, which are also among the interests advanced by the criminal law." 492 U.S. at __ , 109 S. Ct. at 2920. In this case, the majority cites *Browning-Ferris,* but fails to explain why the fundamentally different nature of a claim for punitive damages should not be taken into account for purposes of section 104(a)(2).

It is clear that the majority treats petitioner's claim for punitive damages as in the nature of a claim for "personal injuries" within the meaning of section 104(a)(2). However, the basis for doing so is not clear. The majority neither specifically states that Maryland law is irrelevant nor provides an explanation for its failure to take Maryland law into account. The majority's opinion, reasonably interpreted, is that once petitioner's claim for compensatory damages has been determined to be in the nature of a claim for personal injuries, it is not necessary to review State law to determine the characterization of petitioner's claim for punitive damages.

Unlike the majority, I do not believe that this approach is justified by the fact that section 104(a)(2) uses the words "any damages" and does not expressly distinguish between compensatory and punitive damages. Rather, it seems to me that the majority's analysis on that point begs the question of whether the payment, by whatever name it is described, qualifies under section 104(a)(2) as an amount "paid on account of personal injuries." We have consistently held that the law of the State or jurisdiction under which the

claim is made must be analyzed in order to make that determination. E.g., *Rickel v. Commissioner, supra; Byrne v. Commissioner,* 90 T.C. 1000, 1007-1011 (1988); *Metzger v. Commissioner,* 88 T.C. 834, 850-859 (1987), affd. 845 F.2d 1013 (3d Cir. 1988); *Threlkeld v. Commissioner, supra; Bent v. Commissioner,* 87 T.C. 236, 245 (1986), affd. 835 F.2d 67 (3d Cir. 1987); *Church v. Commissioner,* 80 T.C. 1104, 1107 (1983); *Roemer v. Commissioner,* 79 T.C. 398, 406 and 408 n. 4 (1982), revd. on other grounds 716 F.2d 693 (9th Cir. 1983). To the extent that the majority fails to analyze petitioner's claim for punitive damages under Maryland law, its approach contradicts prior decisions which have consistently held that State law must be consulted.

The memorandum opinion of the U.S. District Court in Alabama cited by the majority, *Burford v. United States,* 642 F. Supp. 635 (N.D. Ala. 1986), does not provide authority for the majority's failure to analyze State law. In fact, to the contrary, the court there made a detailed analysis of Alabama's wrongful death statute under which the taxpayer's claim was made. While damages under that statute are labeled "punitive damages" and "are intended to punish and deter wrongdoers," the court found evidence in the form of Alabama cases and statutes that actions under the statute are treated in Alabama as actions for "bodily injuries" and as the equivalent of a suit for personal injury. *Burford v. United States, supra* at 637-638 and 638 n. 5. Moreover, the court was unable to accept the Commissioner's position that section 104(a)(2)'s exclusion for personal injuries was not intended to include damages paid under Alabama's wrongful death statute. The court appears to have taken the view that, simply stated, death is the ultimate personal injury and damages for wrongful death are covered by section 104(a)(2) even if they are labeled "punitive."

Unlike *Burford v. United States,* the majority fails to point to any reason to disregard for tax purposes the characterization of punitive damages by the Maryland courts as penal and not compensatory in nature. I note that the majority opinion makes the statement, "punitive damages have served as a means of compensating plaintiffs for intangible harm and for costs and attorneys' fees." (Major-

ity opinion at 341.) However, the authorities cited by the majority for that proposition make clear that any such compensatory effect of punitive damages is extremely limited in application and does not apply in Maryland.[1]

The majority argues that the phrase "on account of" as used in section 104(a)(2) suggests "causation" and is triggered in the case of punitive damages by the fact that they may not be awarded without a showing of actual damages. (Majority opinion at 339.) In effect, the majority reasons that petitioner's punitive damages were paid "on account of personal injuries" because petitioner could not obtain punitive damages without first making a showing of actual damage. The majority's premise is incorrect in the case of a defamation action. As mentioned above, a plaintiff in an action for defamation is sometimes presumed to have been injured, at least in the case of defamation per se, and is entitled to compensatory and punitive damages without a showing of actual injury. See *Sindorf v. Jacron Sales Co., supra.* Even after the Supreme Court's decision in *Gertz,* the same is true once a plaintiff has shown "actual malice" sufficient to satisfy First Amendment standards, *International Brotherhood of Electrical Workers Local 1805 v. Mayo, supra,* and the same may also be true in cases of purely private defamation, as in petitioner's case.

In any event, the majority's "causation" analysis confuses a prerequisite for eligibility to make a claim for punitive damages with the nature of the claim itself. I do not believe that the nature of petitioner's claim for punitive damages is established as a matter of law under section

---

[1]See Note, "Exemplary Damages in The Law of Torts," 70 Harv. L. Rev. 517, 520-521 (1957) ("the unbroken line of judicial authority in all but three states would seem to preclude any argument that exemplary damages 'in theory' retain any major compensatory character," *supra* at 521). See also W. Prosser and W. Keeton, The Law of Torts, sec. 2, at 9-10 (5th ed. 1984), to the effect that:

Such damages are given to the plaintiff over and above the full compensation for the injuries, for the purpose of punishing the defendant, of teaching the defendant not to do it again, and of deterring others from following the defendant's example. Occasional decisions [fn. ref. omitted, citing one case each from Georgia, Iowa, Kansas and Texas] have mentioned the additional purpose of reimbursing the plaintiff for elements of damage which are not legally compensable, such as wounded feelings or the expenses of suit.

Something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage, such as spite or "malice," or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton. [Fn. refs. omitted.]

104(a)(2) by the nature of a taxpayer's claim for compensatory damages.

Moreover, the majority's "causation" analysis departs from our previous and consistent approach in other cases where one type of damages is a prerequisite for another: *Rickel v. Commissioner,* 92 T.C. 510 (1989); *Byrne v. Commissioner,* 90 T.C. 1000 (1988); *Thompson v. Commissioner,* 89 T.C. 632 (1987), affd. 866 F.2d 709 (4th Cir. 1989); *Pistillo v. Commissioner,* T.C. Memo. 1989-329; *Sparrow v. Commissioner,* T.C. Memo. 1989-315; and *Wirtz v. Commissioner,* T.C. Memo. 1989-139. Rather than simply concluding that the prerequisite type of damages *caused,* and thus determined the taxability of, the second type of damages, we analyzed the nature of each in order to delineate its tax consequences. See also *Thomson v. Commissioner,* T.C. Memo. 1965-237.

For example, in *Rickel v. Commissioner, supra,* we differentiated, for purposes of section 104(a)(2), the tax consequences of the two types of damages available under the Age Discrimination in Employment Act (ADEA), despite a similar "causation" relationship between the two types of damages. Under the ADEA, a victim of discrimination is entitled to lost wages if the employer violated the ADEA, and liquidated damages if the discrimination was willful. Both arise from the same injury, discrimination, and liquidated damages cannot be awarded unless lost wages are first awarded. Each, however, produces different tax consequences: the lost wages damages component is *includable* in income, but the liquidated damages component is *excludable.* Had we applied in *Rickel v. Commissioner* the causation analysis which the majority applies to the facts before us today, we would have been compelled to hold that liquidated damages under the ADEA are includable in income because the taxpayer would never have received them "but for" the underlying includable lost wages. Instead, we examined the *character* of both types of damages and held each had differing tax consequences, despite the "causation" relationship between the two.

In adopting the approach that punitive damages are automatically covered by section 104(a)(2) without any consideration of State law, the majority has formulated an

expansive view of the statute and, in my view, has run afoul of the Supreme Court's long-standing admonition that exclusions from income are to be narrowly construed. See, e.g., *Commissioner v. Jacobson,* 336 U.S. 28, 48-49 (1949); *Helvering v. Northwest Steel Mills,* 311 U.S. 46, 49 (1940); *Deputy v. du Pont,* 308 U.S. 488, 493 (1940); *New Colonial Ice Co. v. Helvering,* 292 U.S. 435, 440 (1934).

Because of the distinction between compensatory and punitive damages under both Maryland and Federal law, and our mandate to construe exclusions from income narrowly, I would hold that the punitive damages received by petitioner in this case are not "damages received * * * on account of personal injuries."

HAMBLEN, *J.,* agrees with this dissent.